## BANKAMERICA CORP. ET AL. *v.* UNITED STATES

No. 81–1487.   Argued January 19, 1983—Decided June 8, 1983

BURGER, C. J., delivered the opinion of the Court, in which BLACKMUN, REHNQUIST, STEVENS, and O'CONNOR, JJ., joined. WHITE, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 140. POWELL, J., took no part in the decision of the case.

*William Simon* argued the cause for petitioners. With him on the briefs were *John S. Kingdon, J. Randolph Wilson, William H. Allen, Virginia G. Watkin, Edward Wolfe, H. Helmut Loring, Robert D. Raven, William Alsup, Ira M. Millstein,* and *Richard E. Guggenhime, Sr.*

*Edwin S. Kneedler* argued the cause for the United States. With him on the brief were *Solicitor General Lee, Assistant Attorney General Baxter, Deputy Solicitor General Shapiro, Barry Grossman, Catherine G. O'Sullivan,* and *Geoffrey S. Stewart.**

CHIEF JUSTICE BURGER delivered the opinion of the Court:

The question presented is whether § 8 of the Clayton Act bars interlocking directorates between a bank and a competing insurance company.

---

*Briefs of amici curiae* urging reversal were filed by *Erwin N. Griswold, Jack H. Blaine,* and *Allen R. Caskie* for the American Council of Life Insurance; and by *John L. Warden* for the New York Clearing House Association et al.

I

In 1975, the United States brought these companion test cases (now consolidated) against 10 corporations and 5 individuals. The corporations were three banks and their three respective holding companies, and four mutual life insurance companies. The five individuals each served on the board of directors of one of the banks or bank holding companies and one of the insurance companies. It was stipulated that the interlocked banks and insurance companies compete in the interstate market for mortgage and real estate loans.

The Government asserts that interlocking directorates between banks and insurance companies violate § 8 of the Clayton Act, 38 Stat. 732, as amended, 15 U. S. C. § 19. The fourth paragraph of § 8, on which the Government relies, provides:

> "No person at the same time shall be a director in *any two or more corporations*, any one of which has capital, surplus, and undivided profits aggregating more than $1,000,000, engaged in whole or in part in commerce, *other than banks, banking associations, trust companies, and common carriers* subject to the Act to regulate commerce, approved February fourth, eighteen hundred and eighty-seven, if such corporations are or shall have been theretofore, by virtue of their business and location of operation, competitors, so that the elimination of competition by agreement between them would constitute a violation of any of the provisions of any of the antitrust laws." (Emphasis added.)

In short, this statute forbids a person to serve simultaneously on the boards of directors of two or more corporations that meet certain specifications, namely, that the corporations be engaged in commerce, at least one of them having capital, surplus, and undivided profits worth more than $1 million, that they be competitors, and that they be

"other than banks, banking associations, trust companies, and common carriers . . . ."

According to the Government, the language "[n]o person at the same time shall be a director in any two or more corporations . . . other than banks" prohibits interlocking directorates between any two or more competing corporations, but excludes from this general prohibition interlocking directorates between banks. The Government argues that the purpose of the "other than banks" clause was simply to prevent overlapping regulation of interlocks between banks, which are separately regulated in the first three paragraphs of §8. Thus, it interprets the fourth paragraph of §8 to reach interlocks between banks and nonbanks, which interlocks are otherwise unregulated. Petitioners respond that the "other than banks" clause expressly excludes interlocking directorates involving banks from the scope of the fourth paragraph of §8.

On cross-motions for summary judgment, the United States District Court for the Northern District of California granted summary judgment for petitioners and dismissed the Government's suits. *United States* v. *Crocker National Corp.*, 422 F. Supp. 686 (1976). The District Court held:

> "[A] normal reading of the statutory language 'two . . . corporations . . . other than banks' compels the conclusion that the statute applies only to two corporations, neither of which is a bank.
>
> •      •      •      •      •
>
> "[A]n ordinary reading of the statutory prohibition '[n]o person . . . shall [serve as] a director in any two or more corporations . . . other than banks' means that banks were not to be subject to this prohibition." *Id.*, at 689–690.

Although the District Court saw no need for further factual inquiry in light of the "clear statutory language," *id.*, at 690, it observed that this interpretation of the statute was "confirmed by 60 years of administrative and Congressional inter-

pretation, as well as by the legislative history underlying section 8." *Id.*, at 703.

A divided Court of Appeals reversed. *United States* v. *Crocker National Corp.*, 656 F. 2d 428 (CA9 1981). Unlike the District Court, the majority viewed the statutory language as ambiguous. It stated that the "other than banks" clause could be interpreted equally plausibly to mean either "two or more corporations [none of which are] banks," or "two or more corporations [not all of which are] banks." *Id.*, at 434 (emphasis deleted). Relying chiefly on its view of the underlying policy of the Clayton Act, the Court of Appeals held that the fourth paragraph of § 8 should be interpreted to bar all interlocking directorates between banks and competing nonbanking corporations.

In the view of the Court of Appeals, petitioners' position left a "gap" in the coverage of § 8. Discerning nothing in the legislative history directly bearing on the applicability of § 8 to interlocking directorates between banks and nonbanking corporations, the Court of Appeals relied on the broad purpose of Congress to condemn "interlocking directorates between large competing corporations," *id.*, at 439, as support for an interpretation of § 8 leaving no "loopholes." It thus interpreted the "other than banks" language to refer back to the interlocks between banks regulated in the preceding paragraphs of § 8; this interpretation left interlocking directorates between banks and nonbanks subject to the general bar of the fourth paragraph of § 8.[1]

We granted certiorari, 456 U. S. 1005 (1982), and we reverse.

## II

The Clayton Act of 1914 was passed in a period when Congress was focusing on the perceived evils of corporate

---

[1] The Court of Appeals also rejected petitioners' claim that the interlocked insurance companies and bank holding companies were not "competitors" within the meaning of § 8. 656 F. 2d, at 450–451. In light of our disposition of the case, we need not reach this issue.

bigness and monopoly. President Wilson, for example, had made the "trusts" a core issue of his 1912 campaign; Congress followed up with the Pujo Committee investigation into the investment banking trust. See generally Travers, Interlocks in Corporate Management and the Antitrust Laws, 46 Texas L. Rev. 819, 824–829 (1968). Interlocks between large corporations were seen in the public debate as *per se* antagonistic to the public interest; many, including President Wilson, called for legislation that would, among other things, ban all kinds of interlocks. Interlocks were condemned regardless of whether the relationship between the corporations was horizontal or vertical; whether it was accomplished through the sharing of personnel, including directors and officers; or whether it was achieved through interlocking stock holdings or other indirect forms of domination. See, *e. g.*, S. Rep. No. 698, 63d Cong., 2d Sess., 15 (1914); Hearings on Trust Legislation before the House Committee on the Judiciary, 63d Cong., 2d Sess., 816, 818–820, 823, 925 (1914) (hereafter Trust Hearings). Plainly, these were policy matters appropriate for Congress to resolve.

However, when the Clayton Act was enacted, its scope was considerably less comprehensive than many of the proposals pressed upon Congress. Rather than enacting a broad scheme to ban all interlocks between potential competitors, Congress approached the problem of interlocks selectively, limiting both the classes of corporations and the kinds of interlocks subject to regulation.

Three classes of business organizations are regulated by the Clayton Act's provisions concerning corporate interlocks and each class is subject to different restraints. Clayton Act §§ 8 and 10, 15 U. S. C. §§ 19 and 20. Section 10 regulates, but does not prohibit, certain types of interlocks between common carriers and various other corporations with which the carrier has a supplier or customer relationship; it does not regulate horizontal interlocks between competing common carriers. The first three paragraphs of § 8 regulate inter-

locks between banks and trust companies that meet certain geographic and other requirements. These provisions bar a wide range of personnel interlocks, including common directors, officers, and employees. The fourth paragraph of § 8 concerns the class of competing corporations "other than banks, banking associations, trust companies, and common carriers"; it prohibits only shared directors between competing corporations and does not bar any other kind of personnel interlock or any kind of vertical interlock. It is against this pattern of specific and limited regulation of corporate interlocks that we approach the narrow statutory question presented.

The starting point, as always, is the language of the statute. The narrow question here is whether the fourth paragraph of § 8 of the Clayton Act bars interlocking directorates involving a bank and a nonbanking corporation with which it competes. The language of the statute is unambiguous in prohibiting interlocking directorates between "two or more corporations . . . other than banks." The most natural reading of this language is that the interlocked corporations must all be corporations "other than banks." It is self-evident that a bank and a nonbanking corporation are not both corporations "other than banks." Thus, the fourth paragraph of § 8 by its express terms does not prohibit interlocking directorates between a bank and a competing nonbanking corporation. This reading of the statute is reinforced both by the structure of the Clayton Act and by the structure of the fourth paragraph of § 8.

The Clayton Act selectively regulates interlocks with respect to three different classes of business organizations: those interlocks between banks are covered in the first three paragraphs of § 8 and those interlocks involving common carriers are covered by § 10. Viewed in this framework, the purpose of the "other than" clause in the fourth paragraph of § 8 was to exclude altogether interlocking directorates involving either banks or common carriers. Moreover, this inter-

pretation is the only one consistent with the treatment of "common carriers" in the "other than" clause.

The Government does not dispute that the language "two or more corporations . . . other than banks [or] common carriers" completely excludes from the fourth paragraph any interlocking directorates in which any of the corporations involved is a common carrier; it should follow, logically, that it also excludes interlocking directorates involving banks. Put another way, the language "two or more corporations . . . other than banks [or] common carriers" means "two or more corporations *none of which is a common carrier.*" To be consistent, that language must also be interpreted to mean "two or more corporations *none of which is a bank.*"

In our view, it strains the meaning of ordinary words to read "two or more corporations other than *common carriers*" to mean something completely different from "two or more corporations other than *banks,*" as the Court of Appeals did. 656 F. 2d, at 442–443. In *Mohasco Corp.* v. *Silver*, 447 U. S. 807, 826 (1980), for example, we rejected as unreasonable the claim that the word "filed" could have two different meanings in two separate subsections of the same statute. Similarly, we reject as unreasonable the contention that Congress intended the phrase "other than" to mean one thing when applied to "banks" and another thing as applied to "common carriers," where the phrase "other than" modifies both words in the same clause.

The language of the fourth paragraph of § 8 supports this interpretation. The fourth paragraph begins with a general bar against interlocking directorates: "No person at the same time shall be a director in any two or more corporations." This general bar is limited by four separate clauses, each of which modifies the phrase "two or more corporations." That is, the statute applies only to "two or more corporations" which satisfy these four additional requirements. Clearly, the first clause need be satisfied by only one of the interlocked corporations. By its own terms, it applies to "any

one" of the "two or more corporations." None of the other clauses contain similar language. Rather, they are all written in general language that applies to all the interlocked corporations. Had Congress wished the "other than banks" clause to apply to only one of the interlocked corporations, it would not have presented any difficulty to have said so explicitly as in the first clause.

In rejecting the Government's present interpretation of § 8, we by no means depart from our long-held policy of giving great weight to the contemporaneous interpretation of a challenged statute by an agency charged with its enforcement, *e. g., Edwards' Lessee* v. *Darby,* 12 Wheat. 206, 210 (1827). But the Government does not come to this case with a consistent history of enforcing or attempting to enforce § 8 in accord with what it urges now. On the contrary, for over 60 years the Government made no attempt, either by filing suit or by seeking voluntary resignations, to apply § 8 to interlocks between banks and nonbanking corporations, even though interlocking directorates between banks and insurance companies were widespread and a matter of public record throughout the period.[2] We find it difficult to believe that the Department of Justice and the Federal Trade Commission, which share authority for enforcement of the Clayton Act, and the Congress, which oversees those agencies, would have overlooked or ignored the pervasive and open

---

[2] The District Court found that at present "approximately 40% of the insurance company directors in America are also bank directors." *United States* v. *Crocker National Corp.,* 422 F. Supp. 686, 691 (1976). According to the American Council of Life Insurance, 79% of its 550 members report having directors who are also directors of banks; of that 79%, bank directors constituted an average 33% of the insurance companies' boards. Brief for American Council of Life Insurance as *Amicus Curiae* 3. It is likely that a substantial number of these interlocking directorates are between insurance companies and banks that compete in the credit markets, and hence under the Government's interpretation violate § 8.

practice of interlocking directorates between banks and insurance companies had it been thought contrary to the law.[3]

It is true, of course, that "[a]uthority actually granted by Congress . . . cannot evaporate through lack of administrative exercise," *FTC* v. *Bunte Brothers, Inc.*, 312 U. S. 349, 352 (1941); the mere failure of administrative agencies to act is in no sense "a binding administrative interpretation" that the Government lacks the authority to act. *United States* v. *E. I. du Pont de Nemours & Co.*, 353 U. S. 586, 590 (1957). However,

> "just as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred." *FTC* v. *Bunte Brothers, Inc.*, *supra*, at 352.

Similarly, in *FPC* v. *Panhandle Eastern Pipe Line Co.*, 337 U. S. 498, 513 (1949), this Court held that "[f]ailure to use such an important power for so long a time indicates to us that the Commission did not believe the power existed." In the circumstances of this case, the Government's failure for over 60 years to exercise the power it now claims under § 8 strongly suggests that it did not read the statute as granting such power.

When a court reaches the same reading of the statute as the practical construction given it by the enforcing agencies

---

[3] Another indication of the Government's longstanding position is a 1950 Federal Trade Commission Report which specifically interpreted § 8 not to apply to interlocking directorates between banks and nonbanking corporations. Federal Trade Commission, Report on Interlocking Directorates 10 (1951). The Federal Trade Commission's later decision, *In re Perpetual Federal Savings & Loan Assn.*, 90 F. T. C. 608 (1977), vacated on other grounds, 94 F. T. C. 401 (1979), that such interlocking directorates violate § 5 of the Federal Trade Commission Act, 15 U. S. C. § 45 (1976 ed. and Supp. V), does not undermine the Commission's earlier analysis of § 8 of the Clayton Act.

over a 60-year span, that is a powerful weight supporting such reading. Here, moreover, the business community directly affected *and* the enforcing agencies *and* the Congress have read this statute the same way for 60 years. It is not wholly without significance that Members of Congress and their staffs who have written about this issue have stated that §8 "does not apply to interlocks between commercial banks and competing financial institutions, such as mutual savings banks, insurance companies, and small loan companies." Letter from Rep. Wright Patman to Hon. Arthur F. Burns, Chairman of the Federal Reserve Board (June 1, 1970), reprinted in The Banking Reform Act of 1971: Hearings on H. R. 5700 before the House Committee on Banking and Currency, 92d Cong., 1st Sess., 271 (1971).[4] While these views are not binding on this Court, the weight of informed opinion[5] over the years strongly supports the District Court holding that Congress intended the statute to be interpreted according to its plain meaning.

It is not surprising that for more than a half century literally thousands of citizens in the business world have served as directors of both banks and insurance companies in reli-

---

[4] Accord, Subcommittee on Domestic Finance of the House Committee on Banking and Currency, Control of Commercial Banks and Interlocks Among Financial Institutions, 90th Cong., 1st Sess. (Subcomm. Print 1967), reprinted in 1 Subcommittee on Domestic Finance of the House Committee on Banking and Currency, Commercial Banks and Their Trust Activities: Emerging Influence on the American Economy, 90th Cong., 2d Sess., 881, 925–926 (Subcomm. Print 1968) (the Clayton Act "does not apply to interlocks between commercial banks and competing financial institutions, such as mutual savings banks, insurance companies, and small loan companies"); Subcommittee on Antitrust of the House Committee on the Judiciary, Interlocks in Corporate Management, 89th Cong., 1st Sess., 25–26 (Comm. Print 1965) (the fourth paragraph of §8 "does [not] apply to interlocks with banks").

[5] See also, *e. g.*, Advisory Committee on Banking to the Comptroller of the Currency, National Banks and the Future 94 (1962); 1982 Duke L. J. 938, 939, 949.

ance on what was universally perceived as plain statutory language. These citizens were reassured that the Government's reading of that language indicated that their conduct was lawful. The Government brushes this aside, saying in effect that it will not bring suits against those directors who resign within a reasonable time. Tr. of Oral Arg. 30–31. However, those who elect to resign under this "amnesty" would nonetheless carry a stigma of sorts as violators of federal laws. Equally, and perhaps more, important, such persons face possible civil liability in unknown amounts, liability against which the Government cannot, and does not purport to, render them immune. See *id.*, at 30. While it is arguable that wise antitrust policy counsels against permitting interlocking directorates between banks and competing insurance companies, that policy must be implemented by Congress, and not by a crabbed interpretation of the words of a statute which so many in authority have interpreted in accordance with its plain meaning for so long. If changes in economic factors or considerations of public policy counsel the extension of the Clayton Act to the categories of interlocking directorates implicated here, it is a simple matter for Congress to say so clearly.

If any doubt remains as to the meaning of the statute, that doubt is removed by the legislative history. The relevant provisions of the Clayton Act went through four legislative stages: (1) the initial "tentative bill," (2) the House bill introduced by Representative Clayton, (3) the Senate amendments, and (4) the final bill of the Joint Conference Committee which was enacted into law as the Clayton Act. The evolution of the bill, along with the remarks in Committee and on the floor, rebuts the Government's claim that Congress intended to reach bank-nonbank interlocks in the fourth paragraph of § 8.

The tentative bill proposed by Representative Clayton had three sections dealing with director interlocks. Reprinted in Trust Hearings, at 1577–1579. Section 1 prohibited certain

director and officer interlocks between railroads and specified other corporations, including banks.   Section 2 prohibited certain interlocks between banks.   Section 4, the precursor to the current paragraph 4 of § 8, presumed a violation of the Sherman Act from the existence of a director interlock. It provided, in pertinent part:

> "That if . . . any two or more corporations, engaged in whole or in part in interstate or foreign commerce, have a common director or directors, the fact of such common director or directors shall be conclusive evidence that there exists no real competition between such corporations; and if such corporations shall have been theretofore, or are, or shall have been . . . natural competitors, such elimination of competition thus conclusively presumed shall constitute a combination between the said corporations in restraint of interstate or foreign commerce . . . ."   *Id.*, at 1579.

Extensive hearings were held on this "tentative bill." Louis D. Brandeis, then an adviser to President Wilson, testified that the tentative bill was inadequate to meet what he saw as the need for a broad prohibition against vertical as well as horizontal interlocks.   See generally *id.*, at 681–688.   Representative Carlin objected: "We attempted to do that by section 4 of the bill.   Section 1 deals with the railroads, section 2 with the banks, and section 4 with industrials."   *Id.*, at 681.   Brandeis responded that "as you have section 4 there your clause is limited to a linking together of two industrial corporations who are competitors . . . ." *Ibid.*

Brandeis also testified to the need to prohibit interlocking directorates between all large banks.   *Id.*, at 921–925.   He argued that Congress had the power to do this since "banking is interstate commerce."   *Id.*, at 923–924.   He then turned from the banks to the "other financial concern doing business

in the same place" with which the interlocking directorates should be, but were not under the tentative bill, prohibited:

> "Mr. BRANDEIS: . . . Now, what is a financial concern as I have used that term? I should say that term 'financial concern' includes not only a bank which is a member of a national reserve system but any other bank.
>
> "Mr. VOLSTEAD: Would you include an insurance company?
>
> "Mr. BRANDEIS: And an insurance company also. It seems to me that *both banks and insurance companies, which have a usual place of business in the same place, . . . ought to be included in that prohibition.*" *Id.*, at 925 (emphasis added).

Two facts emerge from this exchange. First, the tentative bill dealt with the different classes of corporations (banks, railroads, and industrials) separately and in different ways. Section 2 dealt exclusively with banks and § 4 exclusively with industrial corporations. Second, the tentative bill was not understood as prohibiting interlocking directorates between banks and "other financial concern[s] doing business in the same place" such as insurance companies.

At the conclusion of the hearings, Representative Clayton introduced H. R. 15657, 63d Cong., 2d Sess. (May 2, 1914), reprinted in Trust Hearings, at 1931–1952, which eventually was enacted as the Clayton Act. Section 9 of that bill generally paralleled the structure of the current § 8. The third paragraph of § 9 (which became the fourth paragraph of the present § 8) provided in pertinent part:

> "[N]o person at the same time shall be a director in any two or more corporations, either of which has capital, surplus, and undivided profits aggregating more than $1,000,000, engaged in whole or in part in commerce, *other than common carriers subject to [the Interstate Commerce Act]* . . . ." (Emphasis added.)

The Committee Report on this bill stated that "[t]his section is divided into three paragraphs, each of which relates to the particular class of corporations described, and the provisions of each paragraph are limited in their application to the corporations belonging to the class named herein." H. R. Rep. No. 627, 63d Cong., 2d Sess., 18 (1914), reprinted in Trust Hearings, at 1970. The first paragraph related solely to the "eligibility of directors in interstate-railroad corporations," *ibid.;* the second paragraph dealt with the "eligibility of directors, officers, and employees of banks, banking associations, and trust companies," *id.*, at 1971; and the third, "industrial corporations" paragraph concerned "the eligibility of directors in industrial corporations engaged in commerce," *ibid.* Nothing in this Report suggests that the third paragraph was intended to deal with directors in banks who also serve as directors in industrial corporations.

The House debates on § 9 of H. R. 15657 confirm that Congress intended to deal separately with banks, railroads, and industrial corporations, and did not intend the third paragraph of § 9 to regulate or prohibit interlocks between these different classes of corporations. During a debate over the banking provisions of § 9, Representative Cullop explained the relationship of the industrial corporations paragraph to the banking paragraphs:

> "That [industrial corporations paragraph] refers to some other corporation than a bank. That does not apply to a bank.
>
> .          .          .          .          .
>
> "This has no reference to the banking business.
> "Mr. CARLIN: That relates to industrial commerce.
> "Mr. CULLOP: Yes. That does not relate to banking. That relates to industrial and commercial corporations, or institutions of that kind, *but has no reference whatsoever to the banking business.*" 51 Cong. Rec. 9604 (1914) (emphasis added).

The House passed H. R. 15657 with changes not relevant here and sent the bill to the Senate. There, the provisions

regulating bank interlocks met with considerable opposition and were ultimately eliminated by the Senate Committee on the Judiciary. The Senate Report explained:

"A Senate amendment to this section strikes out the entire paragraph which relates to interlocking director-ates of banks and trust companies [the first three para-graphs of the current §8]. In proposing this amend-ment a majority of the Committee believed that such legislation as this more properly belongs to the domain of banking rather than of commerce and such additional regulation of bank directorates as may be wise and just should be made by amendments to the national bank acts, and the enforcement of it given to the Comptrol-ler of the Currency and the Federal Reserve Board." S. Rep. No. 698, 63d Cong., 2d Sess., 48 (1914).

However, the Senate Committee did not change the indus-trial corporations paragraph at all: "The House provision in this section relating to interlocking directorates of industrial corporations is not proposed to be changed or amended in any respect." *Ibid.* The Senate passed the bill as reported out by the Senate Committee.

Given the Senate's expressed intent not to regulate bank interlocks, it is not reasonable to believe that the Senate un-derstood the third paragraph of §9, which it left untouched, to bar interlocking directorates involving banks. When the Conference Committee met to iron out differences between the House and Senate bills, it restored the banking provi-sions but added the words "other than banks, banking associ-ations, trust companies" to the "other than common carriers" clause in the industrial corporations paragraph (which be-came the fourth paragraph of the current §8). The most reasonable explanation for this addition is that it clarified what the Senate already understood to be the case: the indus-trial corporations paragraph did not reach interlocking direc-torates involving banks.

This interpretation is supported by the floor debate in the House on the Conference bill. Of those who spoke on the

House floor, only Representative Mann thought that the
original House version of the industrial corporations para-
graph (§ 9, paragraph 3, of H. R. 15657) applied to interlock-
ing directorates with banks. He objected that the amend-
ment adding "banks" to the "other than common carriers"
clause therefore materially changed the meaning of the
fourth paragraph:

> "I know of nothing more vital which was before the
> House than the power and the right to prevent interlock-
> ing directorates of banks. . . . That was one of the basic
> things that the committee made findings on, and when
> this bill was prepared it provided a prohibition against
> interlocking directorates of banks. The House passed it
> in that shape. The Senate passed it in that shape. But
> the House conferees, without authority . . . have pro-
> vided that banks shall no longer be controlled by this
> prohibition of interlocking directorates where banks are
> in competition." 51 Cong. Rec. 16270 (1914).

In response, Representatives Sherley and Webb both ar-
gued that Representative Mann had misconstrued the bill as
it had originally been passed by the House. Representative
Webb explained:

> "[T]he third paragraph of section 9 as the bill passed the
> House was never intended to apply to banks, because we
> had an express paragraph in section 9 which took care of
> interlocking directorates in banks.
> ". . . Now, it would be idiotic to say that we included
> also banks and banking associations in the paragraph re-
> ferring to industrial corporations; and in order to make
> the paragraph perfectly plain, we inserted 'other than
> banks and banks [sic] associations' and common carriers,
> which had no effect upon the meaning of that section."
> Id., at 16271.

Representative Sherley echoed Representative Webb's argu-
ment that at no time in its evolution did the industrial cor-

porations paragraph ever prohibit interlocking directorates involving banks. *Id.*, at 16271–16272. He concluded:

> "To say that it was not within the province of the conference to make it clear that only certain banks should be within the provision touching certain interlocking directorates, and that the provision touching industrial corporations [the present fourth paragraph of § 8] was confined to such industrial corporations and should not by any stretch of construction be held to include banks, is to say what seems to be contrary . . . to the plain common sense of the situation." *Id.*, at 16272.

In reviewing this colloquy, it should be remembered that Representatives Webb and Sherley voted for the Clayton Act as it originally passed the House, while Representative Mann voted against it. *Id.*, at 9911. Thus, greater weight is to be accorded the views of Representatives Webb and Sherley concerning the proper interpretation of the original bill than to the views of Representative Mann. See *NLRB* v. *Fruit & Vegetable Packers*, 377 U. S. 58, 66 (1964). Moreover, the fact that the Speaker of the House overruled Representative Mann's point of order suggests that he accepted Representatives Webb's and Sherley's interpretation. Finally, regardless of which Member correctly interpreted the original House bill, the fact remains that they all agreed that under the Conference bill, interlocking directorates involving banks were not covered by the industrial corporations paragraph.

The dissent argues that the "sole purpose of the ['other than banks' amendment] was to make clear that bank-bank interlocks would be governed exclusively by the preceding paragraphs, rather than by the competing corporations paragraph." *Post*, at 145. This interpretation ignores the fact that the minimum size requirements in the banking and industrial corporations provisions were not comparable. As the Clayton Act was originally enacted, the banking provisions measured size on the basis of "deposits, capital, surplus, and undivided profits" aggregating $5 million or more; the industrial corporations paragraph measured size on the

basis of "capital, surplus, and undivided profits" aggregating $1 million or more without regard to "deposits." Clayton Antitrust Act of 1914, § 8, 38 Stat. 732–733. There is no reason to assume that a bank with "deposits, capital, surplus, and undivided profits" of $5 million is comparable to a bank with "capital, surplus, and undivided profits" of $1 million. Thus, the provisions do not dovetail in the manner suggested by the dissent.

It may well be, as the dissent speculates, *post*, at 146–147, that a number of Congressmen mistakenly thought that banking was not interstate commerce. Nonetheless, Congress chose to deal with the problems of industrial and financial concentration according to the class of corporations involved. It chose to regulate banks in what are now the first three paragraphs of § 8; to regulate common carriers in what is now § 10; and to regulate industrial and commercial corporations in the fourth paragraph of § 8. We are bound to respect that choice; we are not to rewrite the statute based on our notions of appropriate policy.

The judgment of the Court of Appeals is

*Reversed.*

JUSTICE POWELL took no part in the decision of this case.

JUSTICE WHITE, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

The primary issue in this case is whether ¶ 4 of § 8 of the Clayton Act (the "competing corporations provision"), 15 U. S. C. § 19, prohibits interlocking directorates between banks and nonbanks. The Court holds that it does not, thereby exempting this entire species of interlocks from any regulation whatsoever, even though such interlocks undisputably may have serious anticompetitive consequences directly contrary to the policies of our antitrust laws. I am quite sure that Congress intended no such result, and I therefore dissent.

## I

Subject to certain other exemptions not presently relevant, ¶4 of §8 prohibits interlocking directorates between two or more corporations engaged in whole or part in commerce, "other than banks, banking associations, trust companies, and common carriers . . . ." The question here is whether this "other than banks" exemption is applicable to interlocks where any single one of the interlocked corporations is a bank, as petitioners contend, or whether it applies only when all of the interlocked corporations are banks, as the Government asserts. Both sides argue, with straight faces, that the plain statutory language supports their respective constructions of §8. The Court, with an equally straight face, agrees with the petitioners and solemnly proclaims, *ante*, at 128, that the self-evident, unambiguous language of the statute requires the conclusion that §8 does not prohibit bank-nonbank interlocking directorates. With deference, I must say that it escapes me how either the Court or the litigants can seriously maintain that the meaning of §8 is unambiguous, or even that one side's reading is significantly "more natural" than the other's.

In my view, the literal wording is far from conclusive and should not be dispositive. Consider the following analogy: a statute states that "no person shall own two or more automobiles, other than Fords." According to the Court, such a provision plainly would not prohibit a person from owning one Chevrolet and one Ford. Although such an interpretation is possible, it is equally plausible to interpret the "other than" clause as exempting only the ownership of two Fords from the reach of the statute. Similarly, ¶4 of §8 can easily be read as exempting only an interlock between two banks. The naked statutory wording provides insufficient guidance as to Congress' true intent. It is therefore necessary to consider the legislative history.

## II

In considering the legislative materials, it is important to keep in mind the structure of § 8 and the changes that were made in this provision as it passed through each stage of the enactment process. The first three paragraphs of § 8 proscribe a wide variety of bank-bank interlocks, that is, interlocks between two or more banks. The fourth paragraph bans interlocks between two or more competing corporations engaged in whole or part in commerce "other than" banks or common carriers. See 15 U. S. C. § 19.

As originally passed by the House, the competing corporations paragraph contained the "other than common carriers" proviso, but it did *not* provide any exemption for banks.[1] After the House approved the bill, the legislation went to the Senate, which deleted the paragraphs relating to bank-bank interlocks, but kept the competing corporations provision in the same form passed by the House.[2] Thus, as originally adopted by both the Senate and the House, the competing corporations provision did not contain the "other than banks" language upon which petitioners rely.

The House was unwilling to accept the Senate's deletion of the provisions relating to bank-bank interlocks, so the matter went to a Conference Committee. The conferees agreed to reinclude the provisions banning bank-bank interlocks, with a few minor modifications. The conferees also inserted, for the first time, the "other than banks" proviso into the competing corporations provision.[3] The Senate accepted this change without discussion, but, in the House, there was a

---

[1] See 2 E. Kintner, The Legislative History of the Federal Antitrust Laws and Related Statutes 1733 (1978) (reprinting H. R. 15657, 63d Cong., 2d Sess., as agreed upon in the Committee of the Whole House on June 2, 1914).

[2] See 3 Kintner, *supra*, at 2429 (reprinting H. R. 15657, 63d Cong., 2d Sess., as amended and passed by the Senate on Sept. 2, 1914).

[3] See Report of the Conference Committee, H. R. Conf. Rep. No. 1168, 63d Cong., 2d Sess., 4 (1914), reprinted in 3 Kintner, *supra*, at 2458–2459.

brief but highly significant debate upon which both sides in the present case heavily rely.

The House controversy arose when Representative Mann raised a point of order alleging that the addition of the phrase "other than banks" violated the rule that conferees may not change text to which both Houses have agreed. Representative Mann argued that the addition of the new phrase drastically limited the scope of the competing corporations provision by excluding banks from its purview:

> "[W]hen this bill was prepared it provided a prohibition against interlocking directorates of banks. The House passed it in that shape. The Senate passed it in that shape. But the House conferees, without authority and over and beyond any jurisdiction granted to them, have provided that banks shall no longer be controlled by this prohibition of interlocking directorates where banks are in competition." 51 Cong. Rec. 16270 (1914).

Representative Webb, one of the conferees, and Representative Sherley then took the floor to defend the conference action. Representative Webb asserted that the addition of the "other than banks" language did *not* work a material or substantial change in the provision, because "without question . . . the third paragraph of Section 9 [the present ¶ 4 of § 8] as the bill passed the House was never intended to apply to banks, because we had an express paragraph in Section 9 [the present first three paragraphs of § 8] which took care of interlocking directorates in banks." *Id.*, at 16271. He described how the Senate had deleted the House's bank-bank provisions, and how the conferees had restored them. He continued:

> "The conference did put in [the 'other than banks' proviso] in order to make perfectly clear what in my opinion is already clear; because in the preceding paragraph we had passed a section with reference to interlocking directorates of banks . . . . Now, it would be idiotic to say

that we included also banks and banking associations in the paragraph referring to industrial corporations [the present ¶ 4 of § 8]; and in order to make the paragraph perfectly plain, we inserted 'other than banks and banks *[sic]* associations' and common carriers, *which had no effect upon the meaning of that section." Ibid.* (emphasis added).

Representative Sherley concurred in Representative Webb's assessment. *Id.*, at 16272.[4]

Representative Mann was not satisfied by this explanation. He noted that Representatives Webb and Sherley had conceded that the conferees could not make substantive changes in the provision. He remarked, however, that they did not appreciate the import of the original version of the competing corporations paragraph, even though "they should know more about it than I do." *Ibid.* Then, in the only express discussion of bank-nonbank interlocks in all of the legislative debates on the Clayton Act, Representative Mann indicated that the original version would have prohibited interlocks between a bank and the "Sugar Trust" company, a bank and United States Steel Corp., a bank and a hat company, or a bank and any other company that competed with the bank. He implied, although he did not state directly, that the conferees' version of the bill would not reach such interlocks. *Ibid.*

Then, before Representatives Webb and Sherley had an opportunity to respond to Representative Mann's remarks about bank-nonbank interlocks, the Speaker overruled the point of order and held that, although the conferees could not "drag in new subjects of legislation," the subject matter in question was properly before the conferees, because the Sen-

---

[4] Representative Sherley commented that, even without the new language, "*any court would hold that the inclusion by name of banks and trust companies in one instance excluded them from the general provisions in the other, and, in addition, banks and trust companies are not [competitors of] industrial corporations.*" 51 Cong. Rec. 16272 (1914).

ate had struck out the House bill provisions regulating bank-bank interlocks. The conferees thus did not exceed their authority, and if any Member did not like the Conference Report, he could simply vote against it. *Id.*, at 16273.

Petitioners now strenuously argue, and the Court agrees, *ante*, at 137–139, that this exchange supports their interpretation of § 8. It shows, they say, that both Representative Mann and the conferees agreed that, whether by material change or by mere confirmation of what was already implicit in the bill, the "other than banks" clause requires the conclusion that banks are not within the scope of the competing corporations paragraph. I am convinced, however, that this exchange strongly supports the Government's view of § 8. Although Representative Mann apparently believed that the final version of § 8 would have to be interpreted in the manner suggested by petitioners, the characterization of a bill by one of its opponents has never been deemed persuasive evidence of legislative intent. *NLRB* v. *Fruit & Vegetable Packers*, 377 U. S. 58, 66 (1964). The critical point is that the bill's supporters characterized the addition of the "other than banks" proviso as making no substantive alteration in the scope of coverage of the original version of § 8. Rather, the sole purpose of the addition was to make clear that bank-bank interlocks would be governed exclusively by the preceding paragraphs, rather than by the competing corporations paragraph. The "other than banks" language thus apparently was not intended to touch upon the question of bank-nonbank interlocks.

In light of the statements of the men most familiar with the circumstances surrounding the addition of the "other than banks" language, we should construe this language as not making a substantive change from the original version of § 8. Thus, petitioners are left with the argument that, even without the "other than banks" clause, the provision still does not reach bank-nonbank interlocks. Some Members of the enacting Congress may well have assumed such to be the case,

because it was far from clear at that time that a bank could be a competitor of a corporation "engaged in whole or part in commerce." For example, under the then-prevailing doctrine of *Paul* v. *Virginia*, 8 Wall. 168 (1869), insurance companies were not considered to be engaged in interstate commerce. Furthermore, it was uncertain whether a bank was itself a corporation engaged in commerce. Cf. *Nathan* v. *Louisiana*, 8 How. 73, 81 (1850) (an "individual who uses his money and credit in buying and selling bills of exchange, and who thereby realizes a profit, . . . is not engaged in commerce").[5]

But this Court's more recent cases have made it clear that both banking and insurance corporations are engaged in commerce, and that the antitrust laws apply to them even though some Members of Congress may not have anticipated such a result. See *United States* v. *South-Eastern Underwriters Assn.*, 322 U. S. 533, 556–559 (1944); *United States* v. *Philadelphia National Bank*, 374 U. S. 321, 336, n. 12 (1963). Thus, because the legislative history does not show "a clear and unequivocal desire of Congress to legislate only within that area previously declared by this Court to be within the federal power," *South-Eastern Underwriters, supra,* at 556–557, there would be no merit to an argument that, even without the "other than banks" proviso, the competing corporations provision does not prohibit bank-nonbank interlocks.

The remaining bulk of the legislative history cited by both parties and the Court is, in my opinion, of little relevance. The Government cites numerous statements by Congress-

---

[5] The Court correctly notes, *ante,* at 134, that Louis Brandeis "argued" that banking is interstate commerce. Hearings on Trust Legislation before the House Committee on the Judiciary, 63d Cong., 2d Sess., 924 (1914). However, Brandeis conceded that this was only a "possible theory," one that had "not yet been sustained by the Supreme Court." *Id.,* at 923. Representative Graham expressly disagreed with Brandeis' argument. *Id.,* at 924.

men and President Wilson denouncing interlocking director-
ates in general, and interlocks between competitors in the
banking industry in particular.   However, all of these state-
ments are far too general to provide the Government with
any really substantial support.   None was made explicitly in
connection with the provision at issue.

Petitioners and the Court counter with statements of wit-
nesses and Congressmen during Committee hearings and
floor debates that supposedly indicate that § 8 does not in-
clude bank-nonbank interlocks.[6]   Although these statements
seem very helpful to petitioners, close inspection shows that
such is not the case.   First, all of these statements were
made *prior* to the addition of the "other than banks" proviso.
Thus, for the reasons mentioned above, they only support the
untenable argument that even the original version of § 8 did
not cover bank-nonbank interlocks.   Some Congressmen and
witnesses apparently thought that only "industrial" corpora-
tions engaged "in commerce," but this fact is of no import.
Second, it appears that all of these early statements cited by
petitioners are taken out of context.   They were made in the
context of discussions of vertical interlocks or bank-bank
interlocks.[7]

Accordingly, the only truly relevant legislative history
demonstrates that Congress did not intend to exempt bank-
nonbank interlocks from coverage.   This conclusion seems

---

[6] *E. g.*, "I think there is a grave question as to whether a director in a
great life insurance company should be a director in a bank.   You have
failed to cover that feature."   *Id.*, at 823 (S. Untermyer).   See also *id.*, at
921–925 (L. Brandeis); 51 Cong. Rec. 9604 (1914) (Rep. Cullop) (competing
corporations provision "relates to industrial and commercial corporations,
or institutions of that kind, but has no reference whatever to the banking
business").   See generally *ante*, at 134–137.

[7] The Court does not expressly indicate whether its holding would be
the same in the absence of the "other than banks" proviso, but none of the
legislative history that it cites, *ante*, at 133–139, advances its textual
argument in the slightest.

inescapable when we add into the equation the rule that exemptions from the antitrust laws must be construed narrowly, see *Union Labor Life Ins. Co.* v. *Pireno*, 458 U. S. 119, 126 (1982); *FMC* v. *Seatrain Lines, Inc.*, 411 U. S. 726, 733 (1973), and the fact that bank-nonbank interlocks have strong anticompetitive effects that run counter to at least the spirit of the Clayton Act. Indeed, neither the Court nor petitioners have identified any logical policy reasons why Congress would have wanted bank-nonbank interlocks, unlike every other species of interlocks between competing corporations, to be totally exempt from any form of regulation. Hence, I am convinced that the Court's holding creates "a loophole in the statute that Congress simply did not intend to create." *United States* v. *Naftalin*, 441 U. S. 768, 777 (1979).[8]

## III

The most appealing argument in favor of the Court's holding comes not from the statutory language or the legislative

---

[8] The Court states, *ante*, at 129, that the Government does not dispute that the "other than common carriers" language of § 8 exempts carrier-noncarrier interlocks, and that, to be consistent, the "other than banks" exemption should be interpreted in the same manner. In the first place, the Government has not in this Court taken a position one way or the other on the question whether § 8 applies to carrier-noncarrier interlocks. This issue may be largely academic, for it is difficult to think of examples of situations in which, within the meaning of § 8, a carrier would be a "competitor" of a noncarrier. In any event, a strong argument can be made that § 8 does apply to carrier-noncarrier interlocks. On the same day the House originally passed the Clayton Act, it also passed an amendment to the Interstate Commerce Act (ICA) that would have prohibited carrier-carrier interlocks not approved by the Interstate Commerce Commission. 51 Cong. Rec. 9881, 9910–9912 (1914). A similar bill became law in 1920. See 49 U. S. C. § 11322 (1976 ed., Supp. V). Thus, just as the "other than banks" language was added simply to make clear that the provisions regulating bank-bank interlocks were exclusive, it would seem that the "other than carriers" language was inserted just to clarify that the ICA amendment provided the exclusive means for regulating carrier-carrier interlocks.

history, but from the fact that, for over 60 years, the Government took no action to apply § 8 against bank-nonbank interlocks. The Court correctly notes, *ante*, at 131, that the Government's failure to exercise its authority for such a long time suggests that it did not read the statute as granting such authority. However, as the Court concedes, *ibid.*, the mere failure of an agency to act is in no sense a binding administrative interpretation that the Government lacks power to act. And even if the Justice Department and/or the Federal Trade Commission had in the past expressly adopted petitioners' interpretation of § 8 (and in fact, neither agency ever did so), this fact would hardly be dispositive. At most, it would mean that their present interpretation would not be entitled to the usual degree of deference, since it was inconsistent with their previous view.[9]

There is, of course, no rule of administrative *stare decisis*. Agencies frequently adopt one interpretation of a statute and then, years later, adopt a different view. This and other courts have approved such administrative "changes in course," as long as the new interpretation is consistent with congressional intent.[10] Here, the concerned agencies until recently never formally expressed a view one way or the other, and the legislative history reveals that the Govern-

---

[9] See, *e. g.*, *Bowsher* v. *Merck & Co.*, 460 U. S. 824, 838, n. 13 (1983) (WHITE, J., concurring in part and dissenting in part); *General Electric Co.* v. *Gilbert*, 429 U. S. 125, 142–143 (1976); *Morton* v. *Ruiz*, 415 U. S. 199, 236–237 (1974).

[10] See, *e. g.*, *United States* v. *Generix Drug Corp.*, 460 U. S. 453 (1983) (approving new agency statutory interpretation despite many years of contrary interpretation); *NLRB* v. *J. Weingarten, Inc.*, 420 U. S. 251 (1975) (same); *NLRB* v. *Seven-Up Bottling Co.*, 344 U. S. 344 (1953) (same); *United States* v. *City and County of San Francisco*, 310 U. S. 16, 31–32 (1940) (same). The rule that an agency can change the manner in which it interprets a statute is often said to be subject to the qualification that, if it makes a change, the reasons for doing so must be set forth so that meaningful judicial review will be possible. See *Atchison, T. & S. F. R. Co.* v. *Wichita Bd. of Trade*, 412 U. S. 800, 808 (1973) (plurality opinion); 4 K. Davis, Administrative Law § 20:11 (2d ed. 1983).

ment's present course is the correct one. The Government's past failure to adhere to the proper course should not be used as an excuse for ignoring the true congressional intent. I therefore would affirm the judgment of the Court of Appeals.[11]

---

[11] Under my view of § 8, it is necessary to reach petitioners' alternative argument that the interlocked insurance companies and bank holding companies are not "competitors" within the meaning of § 8. But in light of the Court's holding, I see no point in addressing this issue at length. Suffice it to say that I am inclined to agree with the Court of Appeals that bank holding companies and their subsidiary banks are so closely related that they should be treated as one entity for § 8 purposes. See *United States* v. *Crocker National Corp.*, 656 F. 2d 428, 450–451 (CA9 1981).