Roger HERNDON, Terri Whitehurst, f/k/a Terrie W. Bennett, Johnny James Jackson, Jr., Yvette McRae Outing, and Donnie Hall, Plaintiffs,

v.

ITT CONSUMER FINANCIAL CORPORATION, a Delaware Corporation, d/b/a ITT Financial Services, d/b/a Aetna Finance Company, a Delaware Corporation; ITT Corporation, f/k/a International Telephone and Telegraph Corporation, a Delaware Corporation; ITT Consumer Services Corporation, a Delaware Corporation; ITT Financial Corporation, a Delaware Corporation; Lyndon Insurance Company, a Wisconsin Corporation; ITT Lyndon Life Insurance Company, a Missouri Corporation; American Bankers Life Assurance Company of Florida, a Florida Corporation; and John Doe I–VIII, Defendants.

No. C–C–90–314–P.

United States District Court, W.D. North Carolina, Charlotte Division.

April 13, 1992.

James L. Blane, Sanders Millette & Blane, Charlotte, N.C., Mark Reinhardt, William H. Crowder, Reinhardt and Anderson, St. Paul, Minn., for plaintiffs.

Peter J. Covington, Smith Helms Mulliss & Moore, George C. Covington, Kennedy Covington Lobdell, & Hickman, Charlotte, N.C., Charles A. Schneider, Sills & Brodsky, P.C., Washington, D.C., John E. Stein, Brightwood, Va., for defendants.

## MEMORANDUM OF DECISION and ORDER

ROBERT D. POTTER, District Judge.

THIS MATTER is before the Court on opposing Motions for Summary Judgment. Plaintiffs' Motion, filed 9 October 1991, seeks a Judgment of this Court declaring the sale by Defendants of certain non-credit insurance a *per se* violation of North Carolina law. On 13 December 1991, the ITT Defendants moved for summary judgment and an Order dismissing Plaintiffs' Complaint with prejudice. Subsequently, on 20 December 1991, Defendant American Bankers Life Assurance Company filed its Motion for Summary Judgment. Defendant American Bankers simply adopted the Motion and supporting brief of the ITT Defendants.

On 2 March 1992, this Court heard oral arguments on these Motions. In addition, the Court heard oral arguments on Defendants' Motion, filed 1 November 1991, to Strike. Appearing for Plaintiffs were James L. Blane, Esq. and Mark Reinhardt, Esq. Appearing for the ITT Defendants were Peter J. Covington, Esq. and George C. Covington, Esq. Appearing for Defendant American Bankers Life Assurance Company of Florida were Everett J. Bowman, Esq. and D. Blaine Sanders, Esq. Having heard the arguments of the Parties, and having read their voluminous briefs, this Court finds the pending Motions for Summary Judgment now ripe for disposition.

At the Court's hearing of 2 March 1992, upon the conclusion of pertinent argument, this Court granted the Motion of Defendants to Strike. In so ruling, the Court found that some items of Plaintiffs' proffered evidence would not be admissible at trial. As such, the Court ordered stricken the affidavit of William H. Crowder and its attached exhibits, exhibits 1, 3, 4, and 7 through 10 of Plaintiffs' Memorandum in Support of Motion for Summary Judgment, and all argument contained within the Memorandum predicated on the affidavit or exhibits. Accordingly, this Court has not relied upon these materials in its considera-

tion of Plaintiffs' Motion for Summary Judgment.

### Factual Background

The Parties in this action do not dispute the facts. Both Defendants and Plaintiffs agree summary judgment may properly be granted by the Court. As such, it is not necessary to set forth a detailed statement of facts. Rather, the Court will briefly summarize pertinent information.

Defendants operate a nationwide network of consumer lending institutions. In North Carolina, Defendants do business as Aetna Finance Company. Plaintiffs assert claims against Defendants under four statutes: the North Carolina Consumer Finance Act (the "Act"), the Racketeer Influenced and Corrupt Organizations Act, N.C.General Statute § 75-1.1, and the Truth in Lending Act.

Plaintiffs are individuals who borrowed money from Aetna Finance Company. In the course of borrowing this money, Plaintiffs also purchased certain insurance products from Aetna. These products included "SPT-5," a single-premium, five year term, *non-credit* life insurance policy developed and offered by American Bankers Life Assurance Company. In addition, Aetna sold another insurance product, "Income Assist," a single-premium, *non-credit* disability insurance product also developed and offered by American Bankers. Plaintiffs contend that Aetna's sale of these non-credit insurance products is *per se* illegal under North Carolina's Consumer Finance Act. Plaintiffs allege that by selling these products, financing the premium, receiving interest on the premium and repayment of the premium, Defendants are engaged in "double-dipping," a practice Plaintiffs contend is prohibited by the Act. That Act, at North Carolina General Statute section 53–178 provides in pertinent part: "no further or other charges or insurance commissions shall be directly or indirectly contracted for or received by any licensee except those specifically authorized by this Article." N.C.Gen.Stat. § 53–178 (1990). Further, section 53–189 of Chapter 53 provides: "Credit life, credit accident and health, and credit property insurance may be written in

accordance with the provisions of the North Carolina Act for the Regulation of Credit Life, Credit Accident and Health and Credit Property Insurance...." N.C.Gen. Stat. § 53–189 (1990). Plaintiffs note that section 53–178 limits licensees to "charges or insurance commissions ... specifically authorized by this Article." Plaintiffs then assert that only the following charges are allowed: interest (N.C.Gen.Stat. §§ 53–173, 53–176), fees for returned checks (N.C.Gen. Stat. § 53–175), recording fees (N.C.Gen. Stat. § 53–177), and commissions on credit life, credit accident and health and credit property insurance (N.C.Gen.Stat. § 53–189).

Defendants counter by noting that their selling of noncredit insurance policies had the formal approval of the North Carolina Commissioner of Banks. North Carolina General Statute 53–172, a part of the Consumer Finance Act, provides in relevant part:

> No licensee shall conduct the business of making loans under this Article within any office, suite, room or place of business in which any other business is solicited or engaged in unless, in the opinion of the [State Banking] Commissioner, such other business would not be contrary to the best interests of the borrowing public and is authorized by the Commissioner in writing. If the conduct of any other business authorized by the Commissioner should, in the opinion of the Commissioner, prove contrary to the best interests of the borrowing public, the authority granted to conduct such business shall be withdrawn in writing by the Commissioner.

N.C.Gen.Stat. 53–172 (1990). Defendants assert that in 1971, pursuant to the statute, the then Commissioner approved the request of Aetna to sell insurance in its North Carolina offices. Defendants further note that in 1982, the then Commissioner authorized Aetna to sell SPT–5 in its North Carolina offices. Defendants also note that in 1984, the then Commissioner authorized Aetna to sell Income Assist from its North Carolina offices. In 1990, the Commissioner determined that the sale

of non-credit insurance products by consumer lending agencies was improper. As a result, Aetna then ceased selling SPT–5 and Income Assist.

### Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, responses to discovery, and the record reveal that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c) of the Federal Rules of Civil Procedure. The party moving for summary judgment has the initial burden of showing that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After the moving party has met its burden, the non-moving party must come forward with specific facts showing that evidence exists to support its claims and that a genuine issue for trial exists. *Id.; Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see* F.R.Civ.P. 56(e) (in response to motion for summary judgment, "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). When considering motions for summary judgment, courts must view facts and inferences in the light most favorable to the party opposing the motion for summary judgment. *Matsushita*, 475 U.S. at 587–88, 106 S.Ct. at 1356; *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When, however, the evidence from the entire record could not lead a rational fact-finder to find for the non-moving party, no genuine issue for trial exists and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. As noted, here there is no factual dispute. As such, it is for this Court merely to identify and apply controlling law.

### Discussion

No North Carolina Court has yet interpreted the Consumer Finance Act as it applies to the sale of non-credit insurance. As such, this Court must forecast how the North Carolina Supreme Court would decide this question. *See e.g., Wilson v. Ford Motor Co.*, 656 F.2d 960 (4th Cir. 1981). In so doing, the Court's task is primarily one of statutory interpretation.

■ Proper interpretation of a statute requires a focus on the language. *Bankamerica Corp. v. United States*, 462 U.S. 122, 128, 103 S.Ct. 2266, 2270, 76 L.Ed.2d 456 (1983). The Act now before the Court provides in pertinent part: "no further or other charges or insurance commissions shall be directly or indirectly contracted for or received by any licensee except those specifically authorized by this Article." N.C.Gen.Stat. § 53–178 (1990). Further, the Act provides that the Commissioner of Banks may authorize a licensee to make loans and conduct "other business" where "such other business would not be contrary to the best interests of the borrowing public." N.C.Gen.Stat. 53–172 (1990). This Court finds that the plain language of the Act allows licensees to receive only those charges or insurance commissions specifically authorized by the Act. However, the Act authorizes the Commissioner to approve the conduct of "other business" by licensees. As such, where the Commissioner authorizes a licensee to conduct specified other businesses, for example, the sale of non-credit insurance, charges or commissions received for such insurance would then be authorized pursuant to the Act. This interpretation of the Act is not unique to this Court.

■ It is a rudimentary principle of statutory interpretation that:

[t]he construction placed upon a statute by the officers whose duty it is to execute it is entitled to great consideration, especially if such construction has been made by the highest officers in the executive department of the Government or has been observed and acted upon for many years; and such construction

should not be disregarded or overturned unless it is clearly erroneous.

*Gill v. Commissioners,* 160 N.C. 176, 188, 76 S.E. 203 (1912); *see also North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 522 n. 12, 102 S.Ct. 1912, 1918 n. 12, 72 L.Ed.2d 299 (1982) ("In construing a statute, this Court normally accords great deference to the interpretation, particularly when it is longstanding, of the agency charged with the statute's administration."); *E.I. du Pont de Nemours & Co. v. Collins,* 432 U.S. 46, 55–56, 97 S.Ct. 2229, 2234–35, 53 L.Ed.2d 100 (1977) ("A reviewing court is ... to be guided by the 'venerable principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong' ").

■ Here, it is undisputed that the Commissioner of Banks of the State of North Carolina is charged with the administration of the Consumer Finance Act. Affidavit of William T. Graham par. 4. It is further undisputed that, beginning in 1971, and pursuant to North Carolina General Statute section 53–172, successive Commissioners of Banks have authorized licensees "to make charges, collect fees and receive commissions for non-credit insurance and other services and products available to consumers." *Id.* at par. 7; Affidavit of Robert L. Anderson. Not until August of 1991 did current and then Commissioner William T. Graham order this authorization withdrawn. *Id.* at par. 21. Commissioner Graham did not intend this Order to apply retroactively. *Id.*

As such, at the time each Plaintiff purchased non-credit insurance from Aetna, Aetna was acting in reliance upon an express authorization by the then Commissioner of Banks. Notwithstanding this express authorization, Plaintiffs move this Court to declare the actions of Defendants to be *per se* illegal. Plaintiffs essentially ask this Court to disregard the longstanding interpretation of the Act by the Commissioner. This Court does not believe the North Carolina Supreme Court would so act, and neither will this Court.

This analysis does not change because the current Commissioner has withdrawn this authorization. *Bankamerica,* 462 U.S. at 130, 103 S.Ct. at 2271. Moreover, the current Commissioner is uncertain his present interpretation of the Act is correct. Exhibit L, Memorandum of Defendants in Opposition to Plaintiffs' Motion for Summary Judgment. Further, the North Carolina Attorney General, in an advisory opinion issued 22 January 1991, expressly found "that the Commissioner of Banks is authorized by N.C.G.S. § 53–172 to allow licensees under the Consumer Finance Act to conduct other business on the same premises as their consumer finance operations." Exhibit 5, Memorandum of Plaintiffs in Support of Summary Judgment. However, the Attorney General further found:

> [I]t is our opinion that the statute prohibits licensees under the Consumer Finance Act from benefitting from any charges or insurance commissions realized from the sale of any services, products, or insurance made as a part of or in connection with a loan transaction under the Act other than those specified in the Act, whether benefit is realized either directly by the licensee, or indirectly by any affiliate or associate of the licensee, or, in the case of corporate licensees, by any subsidiary or parent of the licensee.

Exhibit 5, Memorandum of Plaintiffs in Support of Summary Judgment. This conclusion strikes this Court as incomprehensible given the Attorney General's earlier conclusion that licensees could conduct authorized other businesses. It is contrary to common sense to suggest that any business would choose to carry on activities for which it could not make a profit. This Court will not interpret the Act in so strange a fashion.

Other authority cited by Plaintiffs is neither controlling nor on point. As such, the Court will not address either *Hawkins v. Thorp Credit & Thrift Co.,* 441 N.W.2d 470 (Minn.1989) or the advisory opinion issued by the Attorney General of Iowa on 4 August 1965.

Plaintiffs move the Court to declare Defendants' sale of non-credit insurance products *per se* illegal. Having considered carefully the arguments of the Parties and relevant legal authority, this Courts finds Plaintiffs' Motion to be without merit. As such, this Court will deny Plaintiffs' Motion for Summary Judgment. Further, this Court will grant Defendants' Motion for Summary Judgment as to each of Plaintiffs' claims—all of which rest upon Plaintiffs contention that Defendants illegally sold non-credit insurance.

### Conclusion

This Court finds that both the language of the North Carolina Consumer Finance Act and its interpretation by the North Carolina Commissioner of Banks support Defendants' sale of non-credit insurance. As such, Plaintiffs' Motion for a Judgment finding such sales to be *per se* illegal is without merit.

NOW, THEREFORE, IT IS ORDERED that:

1. The Motion of Plaintiffs for Summary Judgment be, and hereby is, DENIED;

2. The Motion of Defendants for Summary Judgment be, and hereby is, GRANTED. This Matter is hereby DISMISSED WITH PREJUDICE.