762 F.2d 95
 246 U.S.App.D.C. 1
 EASTERN CAROLINAS BROADCASTING CO., Capital Communications,
Inc., Columbia Television Broadcasters, Inc., and
Cosmos Broadcasting Corporation, Appellants,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Clay Broadcasting Company, First Charleston Corporation, et
al., Intervenors.
 No. 84-1174.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 25, 1985.
Decided May 17, 1985.
 
 Appeal from an Order of the Federal Communications Commission.
 Kathryn R. Schmeltzer, Washington, D.C., with whom Jeffrey W. Malickson, Ben C. Fisher, Angela J. Campbell, Lee W. Shubert and John J. Duffy, Washington, D.C., were on the brief, for appellants.
 David Silberman, Counsel, F.C.C., Washington, D.C., with whom Bruce E. Fein, Gen. Counsel, and Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Washington, D.C., were on the brief, for appellee.
 Robert A. Beizer, Washington, D.C., with whom Jane D. Woodfin, Washington, D.C., was on the brief, for intervenors First Charleston Corp., et al.
 Frank U. Fletcher, Vincent J. Curtis, Jr. and David G. Rozzelle, Washington, D.C., were on the brief for intervenor Clay Broadcasting Co.
 Before WALD, GINSBURG and SCALIA, Circuit Judges.
 Opinion for the Court filed by Circuit Judge WALD.
 WALD, Circuit Judge:
 
 
 1
 In 1983, this court affirmed in nearly all respects two separate orders of the Federal Communications Commission ("FCC" or "the Commission") authorizing the construction of two "tall tower" television transmitters near Florence, South Carolina. We agreed with appellant Eastern Carolinas Broadcasting Corporation (doing business as WPDE), however, that the Commission had not adequately explained why the alleged cumulative impact on WPDE of the otherwise separate proposals did not warrant a hearing under the Communications Act ("the Act"). See 47 U.S.C. Sec. 309(d), (e). After our remand, WPDE notified the Commission of its intent to submit supplemental materials concerning the cumulative impact issue. The FCC declined to consider those materials and again concluded that WPDE had failed to demonstrate any need for a hearing on the cumulative impact allegations. WPDE now argues that the FCC's refusal to consider its supplemental filing constituted an abuse of discretion and that its failure to hold a hearing on the cumulative impact issue was capricious. We uphold the Commission.
 
 I. THE BACKGROUND
 
 2
 This is a tale of three cities--Florence and Charleston, South Carolina, and Wilmington, North Carolina. Florence, the home of appellant WPDE, is located between Charleston and Wilmington. In 1980, four Charleston VHF television stations applied to the FCC for permission to construct a common 2,000 foot tall tower transmission station northeast of Charleston in the direction of Florence. In 1981, a Wilmington VHF station applied for permission to build a tall tower west of Wilmington in the direction of Florence in order to replace its recently destroyed transmitter. The Wilmington station and one of the Charleston stations are affiliated with the American Broadcasting Corporation (ABC). WPDE, a Florence UHF station affiliated with ABC, opposed each separate application. In both proceedings, WPDE claimed that the adverse effects of allowing an ABC-affiliated VHF station to penetrate its service area required a public interest hearing under the Commission's UHF impact policy.[1] See 47 U.S.C. Sec. 309(e) (requiring the Commission to hold a hearing if an objector presents a "substantial and material question of fact" concerning an application's consistency with the public interest). WPDE, the only party affected by both proposals, also filed a timely motion to consolidate the two proceedings. In that motion, WPDE argued that the cumulative adverse impact of allowing two VHF ABC affiliates to penetrate its service area was greater than the impact of either proposal considered separately.
 
 
 3
 In 1982, the Commission granted both applications over WPDE's protests. The FCC first found that WPDE had not stated a prima facie case that the Wilmington proposal, considered separately, was inconsistent with the public interest. See Clay Broadcasting Corp., 50 Rad.Reg.2d (P&F) 1273, recon. denied, 51 Rad.Reg.2d (P&F) 916 (1982). On the same day that the FCC denied reconsideration of its Wilmington order, it granted the combined Charleston application, concluding that WPDE's allegations of competitive harm were speculative and could not outweigh the benefits of extended VHF service that would result from the Charleston proposal. See First Charleston Corp., 91 F.C.C.2d 388 (1982).[2] The Commission's entire discussion of WPDE's cumulative impact claim, however, consisted of the following footnote to its Wilmington reconsideration order: "We note that [WPDE] made no prima facie showing that there would be a cumulative impact from our separate actions sufficient to warrant a different result." Clay Broadcasting, 51 Rad.Reg.2d (P&F) at 917 n. 1.
 
 
 4
 On appeal, this court upheld the Commission's separate conclusions concerning the Charleston and Wilmington applications. See Capital Communications, Inc. v. FCC, Nos. 82-1730, 82-1750 & 82-1755 (D.C.Cir. May 5, 1983) (upholding the Charleston order); Eastern Carolinas Broadcasting Co. v. FCC, No. 82-1749 (D.C.Cir. May 5, 1983) (upholding the Wilmington order). We concluded, however, that the FCC had inadequately explained its dismissal of WPDE's cumulative impact claim.
 
 
 5
 We agree that the Commission's consideration of WPDE's cumulative impact allegations was inadequate and conclusory. We therefore reverse the Commission's order with respect to WPDE and remand [the Charleston order] with instructions that it be consolidated with [the Wilmington order] for an explanation from the Commission of the reasons supporting any ruling on appellant's cumulative impact claims.
 
 
 6
 Capital Communications, mem. op. at 3. We therefore directed the Commission to make a reasoned analysis of WPDE's cumulative impact claim.
 
 
 7
 [T]he Commission should provide a sufficient decisional explanation with respect to its conclusions concerning cumulative impact issues.... [T]his explanation should include an analysis of the cumulative effect of the applications for change in VHF transmitter sites on the economic security and viability of WPDE. Just as the Commission balanced the extension of VHF television service against the speculative losses in UHF public interest programming in order to ascertain the consequences to the public interest in [the Charleston case], so the Commission should ascertain whether, despite any injury to WPDE, the public interest is served by granting the two VHF applications in the instant case. If, in the course of its deliberations, the Commission discovers that it is unable to offer a satisfactory justification for its finding of no cumulative impact or to make a reasoned finding concerning where the public interest lies in this case, it should order a hearing on the UHF impact issue.
 
 
 8
 Id. at 4-5 (emphasis added); see also Eastern Carolinas, mem. op. at 1 ("On remand, this case shall be consolidated with [Capital Communications ] so that the Commission may provide an adequate explanation of its consideration of the cumulative impact of the Wilmington and Charleston applications on WPDE. We express no opinion on the need for a hearing.") (emphasis added).
 
 
 9
 Shortly after our ruling, the appellant notified the Commission of its intent to file supplemental information concerning the cumulative impact of the two proposals by September 2, 1983. The supplement, WPDE stated, would synthesize the projections presented in its earlier filings and would offer new evidence concerning the actual effect of the Wilmington order on WPDE. See Notification of Intent to Supplement the Record on Remand, Joint Appendix ("J.A.") at 18 (June 16, 1983).[3] Both the Wilmington and the Charleston stations opposed the proposed supplemental filing. On September 2, the day WPDE tendered its supplement, the Commission adopted an order rejecting the cumulative impact claim. The FCC first concluded that it could provide a rational analysis of the cumulative impact claim on the basis of the existing record and that section 402(h) of the Act, 47 U.S.C. Sec. 402(h), required it to resolve the narrow remanded issue on the basis of the existing record. See First Charleston Corp., FCC 83-386, slip op. at 3-4 (Sept. 8, 1983) [hereinafter cited as Order ]. The Commission then ruled that WPDE's cumulative impact arguments, as submitted in the earlier motion to consolidate, did not require a public interest hearing. See id. at 5-9. In response to WPDE's petition for reconsideration, the Commission reiterated its position that this court had not directed it to reopen the record and that the record in the original Wilmington and Charleston proceedings provided a sufficient basis for a reasoned analysis of the cumulative impact claim. See First Charleston Corp., 97 F.C.C.2d 271, 274-78 (1984) [hereinafter cited as Reconsideration Order ]. The Commission also concluded that WPDE's supplemental comments on the existing record were not necessary to the resolution of this case and that the Act prohibited it from considering the new evidence contained in WPDE's supplement. See id. at 278 & n. 12.
 
 
 10
 On appeal, WPDE argues that the Commission's refusal to consider its supplemental filing constituted an abuse of both agency discretion and this court's mandate, and that the Commission's analysis of the cumulative impact claim was again inadequate and conclusory. Although we agree that the Commission unreasonably relied on section 402(h) in refusing to consider the evidentiary portions of WPDE's supplement, we conclude that its failure to accept WPDE's updated evidence was harmless error in light of its ultimate rationale. We also conclude that the FCC acted within its discretion in declining to address WPDE's additional comments on the existing record and in concluding that WPDE failed to state a prima facie case for a public interest hearing concerning the cumulative impact of the Charleston and Wilmington applications.
 
 II. THE SECTION 402(h) ISSUE
 
 11
 In both orders under review, the FCC placed substantial, though not complete, reliance on section 402(h) of the Act. That provision provides that:
 
 
 12
 In the event that the court shall render a decision and enter an order reversing the order of the Commission, it shall remand the case to the Commission to carry out the judgment of the court and it shall be the duty of the Commission ... to forthwith give effect thereto, and unless otherwise ordered by the court, to do so upon the basis of the proceedings already had and the record upon which said appeal was heard and determined.
 
 
 13
 47 U.S.C. Sec. 402(h). The Commission concluded that section 402(h) deprives it of any discretion to consider the portion of WPDE's supplemental filing that presented new record evidence[4] because this court's remand did not explicitly order the Commission to reopen the record. WPDE argues that the Commission's interpretation of section 402(h) impermissibly contradicts both consistent agency practice and the congressional intent behind this provision. We need not decide, however, whether the agency's interpretation is right or wrong because we conclude that even if right it represented a radical change from prior agency practice on which the appellant could properly rely. Under the circumstances of this case, we hold that it was arbitrary and capricious for the agency to fail to provide notice of that change when such notice would not impede agency compliance with what it now regards as the law and would enable the appellant to take available steps to avoid the inequitable consequences of the sudden change.
 
 
 14
 No court has previously ruled on the Commission's post-remand duties under section 402(h), and the Commission itself has never before stated that section 402(h) precludes it from considering post-remand filings concerning specifically remanded issues in the absence of an explicit court order. Indeed, the Commission, without mentioning section 402(h), has often allowed existing parties to submit additional materials concerning the issues specifically remanded for further agency consideration. See, e.g., WSTE-TV, Inc., 75 F.C.C.2d 52, 53 n. 1 (1979) ("We shall grant all three unopposed requests to accept additional pleadings [after remand]. Good cause exists for acceptance of the pleadings inasmuch as they focus on the Commission's most recent views concerning the use of translator stations, a subject central to this proceeding upon remand."); Lebanon Valley Radio, Inc., 50 F.C.C.2d 383, 384 (1974) ("We believe that the Court's opinion raises significant questions which have not heretofore been adequately addressed. Our deliberation on these questions will be enhanced by limited further participation of the parties."); WAIT Radio, 22 F.C.C.2d 934, 934 (1970) ("The court ... directed the Commission to give the merits of the proposal a hard look and '... state its basis for decision with greater care and clarity than was manifested on its disposition of WAIT's claims.' In line with that decision, this Commission invited any new evidence the parties might wish to submit."), aff'd, 459 F.2d 1203 (D.C.Cir.), cert. denied, 409 U.S. 1027, 93 S.Ct. 461, 34 L.Ed.2d 321 (1972). See also American Television Relay, Inc., 95 F.C.C.2d 1089, 1089-90 (1983); KDAB, Inc., 91 F.C.C.2d 277, 278-79 (1982); Charles Jobbins, 68 F.C.C.2d 46 (1978); Gale Broadcasting, Inc., 19 F.C.C.2d 622, 623 (1969).[5]
 
 
 15
 On remand from KIRO, Inc. v. FCC, 545 F.2d 204 (D.C.Cir.1976), for example, the Commission explicitly determined that it could not adequately explain its earlier decision without soliciting further comments and evidence from the parties.
 
 
 16
 We find that we construed the court's [remand] decision ... too narrowly in that additional submissions by the parties were thought to be precluded. It is essential in this case--involving as it does a shifting of burdens between broadcasters and cable operators--that the data forming the basis of our decision be current and complete. Since some of the data in the record are more than four years old, any ruling on whether the presumption of harm has been rebutted should be made only after updated data are obtained.
 
 
 17
 United Cable Company, 67 F.C.C.2d 1376, 1382 (1978).[6] Similarly, where the Commission has declined to consider additional submissions after remand, it has clearly done so as an exercise of agency discretion after determining that the existing record enabled it to dispose of the remanded issue. See, e.g., Radio Carrollton, 72 F.C.C.2d 269, 272-73 (1979), aff'd mem., No. 79-1749 (D.C.Cir.Oct. 15, 1980); cf. Committee For Community Access v. FCC, 737 F.2d 74, 83-84 (D.C.Cir.1984) ("We note ... that in some cases the Commission reopened the record following a remand from this court.... We leave for the Commission the question of whether this case presents circumstances that warrant the reopening of the record subsequent to our remand."). These cases certainly establish a longstanding administrative practice that is substantially inconsistent with the Commission's present invocation of section 402(h) as an absolute bar to considering WPDE's supplement.[7]
 
 
 18
 The Commission nonetheless announced for the first time in this case that the Act prohibits post-remand consideration of new factual materials in the absence of a specific court order and that "the appropriate course would have been for the petitioners to obtain leave of the Court to supplement the record." Reconsideration Order, 97 F.C.C.2d at 278. At the time of our earlier decision in this case, however, nothing in the FCC's prior practice suggested that WPDE was required to obtain an explicit court order before submitting its supplement. While "[a]uthority granted by Congress ... cannot evaporate through lack of administrative exercise," Federal Trade Comm'n v. Bunte Brothers, Inc., 312 U.S. 349, 353, 61 S.Ct. 580, 582, 85 L. Ed. 881 (1941), the lack of administrative exercise imposes on the agency some obligation to protect the parties before it, where possible, from the consequences of their reliance upon its earlier practice. See generally Bankamerica Corp. v. United States, 462 U.S. 122, 130-32, 103 S.Ct. 2266, 2271-72, 76 L.Ed.2d 456 (1983); National Classification Comm'n v. ICC, 746 F.2d 886, 892-94 (D.C.Cir.1984); Doubleday Broadcasting Co. v. FCC, 655 F.2d 417, 622-23 (D.C.Cir.1971). Specifically, abrupt changes in discretionary agency practice or interpretation require some degree of notice, if possible, when the change threatens to penalize parties for reasonable reliance on the prior practice. See, e.g., Boston Edison Co. v. FPC, 557 F.2d 845, 859 (D.C.Cir.), cert. denied, 434 U.S. 956, 98 S.Ct. 482, 54 L.Ed.2d 314 (1977). Even if the Commission felt that its new interpretation of section 402(h) was not merely permissible but required by law, it could have so advised the appellant before proceeding to dispose of this case without compromising compliance with its new-found congressional mandate.[8] Had it done so, WPDE could have petitioned this court for the explicit authority to supplement the record, a ruling it had no reason to request in the earlier appellate proceedings.
 
 
 19
 We therefore cannot endorse the FCC's reliance on section 402(h) to bar consideration of the updated evidence contained in WPDE's supplement. That reliance, even if legally correct, and even if legally required, was needlessly effected in a manner that arbitrarily deprived the petitioner of a reasonable opportunity to take the steps necessary to obtain a ruling on the propriety of filing supplementary materials after our remand order. In the future, of course, the Commission is completely free to apply any reasonable interpretation of this provision to post-remand proceedings. We hold only that it must do so in a manner that reasonably alerts litigants to the circumstances under which they must petition the court to supplement the record following a remand.
 
 III. DISCRETION TO REOPEN THE RECORD
 A. WPDE's Comments on the Existing Record
 
 20
 The Commission ruled that the portion of WPDE's supplementary materials consisting of comments on the existing record, "aside from section 402(h) considerations, are unnecessary to address the Court's concern that the Commission explain the ruling on WPDE's cumulative impact claims." Reconsideration Order, 97 F.C.C.2d at 278 (footnote omitted). Thus the FCC concluded that the existing record (including WPDE's earlier motion to consolidate) provided ample basis for compliance with our remand order and that, as an exercise of agency discretion, it would decline to consider the additional comments contained in the supplement.The evidence and legal arguments purportedly supporting WPDE's cumulative impact claim have long since been placed in the record. According to the court, it was our failure to adequately address this claim which caused the remand.... To allow the petitioners to make additional arguments on the existing record at this time would offer them a second chance to do that which they could have done when their cumulative impact allegations were initially presented. This course would be neither fair to the applicants nor in the public interest.
 
 
 21
 Id. at 278 n. 12. WPDE now contends that the Commission's treatment of its supplemental comments was both inconsistent with our mandate and an abuse of discretion. We reject both arguments.
 
 
 22
 Our earlier remand in this case was clearly based on the Commission's failure to offer an adequate explanation for its conclusion that WPDE's cumulative impact claim did not warrant a hearing under the Act. We faulted the FCC's apparent failure to articulate with reasonable clarity its assessment of the cumulative claim, not the adequacy of the record before it. See Capital Communications, mem. op. at 3-4. We therefore directed the Commission to provide
 
 
 23
 an explanation from the Commission of the reasons supporting any ruling on appellant's cumulative impact claims. Section 309(d)(2) of the Communications Act plainly requires such a statement of reasons. Furthermore, as in this case, it is impossible for a court meaningfully to exercise its review function when it is unable to ascertain any justification for a legitimately disputed action of the Commission.
 
 
 24
 Id. (emphasis added) (citation omitted). This remand for a "statement of reasons" cannot be equated with an explicit directive either to reopen the record or to accept additional comments on the existing record. By authorizing a hearing "if ... the Commission discovers that it is unable to offer a satisfactory justification for its finding of no cumulative impact," id. at 97 (emphasis added), moreover, we expressly gave the Commission an opportunity to provide such an explanation without soliciting additional materials from the parties. See also Eastern Carolinas, mem. op. at 1 (expressing no opinion on the need for a hearing on remand). Our earlier decision therefore cannot be read to require the FCC to create a new record concerning the cumulative impact issue if the agency could determine that the existing record permitted a "sufficient decisional explanation" of that claim. Capital Communications, mem. op. at 4.[9]
 
 
 25
 Thus WPDE cannot contend that the Capital Communications mandate required the Commission to accept its supplementary comments on the existing record and the Commission cannot (and does not) here argue that Section 402(h) required it to refuse those comments. We are accordingly left with a garden variety exercise of agency expertise, namely the FCC's judgment that the cumulative impact claim could be resolved on the existing record without WPDE's additional comments. Those comments consisted of a "synthesis" or representation of the data and arguments WPDE had presented in the initial proceedings in this case. See WPDE's Brief at pp. 11-14. In its Reconsideration Order, however, the Commission explained that WPDE had been given a full opportunity to present its cumulative impact argument and the underlying evidence in its earlier filings.
 
 
 26
 The petitioners' claim that the refusal to consider the supplemental pleading denied them the opportunity to address the cumulative impact issue is not supported by the evidence in the existing record. In the earlier proceedings, consolidated statistics of the cumulative impact of these proposals were presented in engineering exhibits submitted by WPDE. Those exhibits included analyses of WPDE-TV's Grade 3 service area and the unduplicated ABC network service within that service area as affected by both the existing and proposed operations of the Charleston and Wilmington stations.
 
 
 27
 Reconsideration Order, 97 F.C.C.2d at 277-78. Courts normally reverse an agency's decision not to reopen the record only for abuse of discretion. See, e.g., Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 294-96, 95 S.Ct. 438, 446-47, 42 L.Ed.2d 447 (1974); Interstate Commerce Comm'n v. Jersey City, 322 U.S. 503, 514-15, 64 S.Ct. 1129, 1134-35, 88 L.Ed. 1420 (1944); Greater Boston Television Corp. v. FCC, 463 F.2d 268, 283 (D.C.Cir.1971), cert. denied, 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972). Given this deferential standard of review, we decline to second guess the Commission's determination that WPDE's supplementary comments on the existing record were not necessary to resolve the cumulative impact claim.
 
 B. WPDE's Updated Evidence
 
 28
 Yet WPDE's supplementary filing also purports to contain cumulative impact data that was not available at the time of the initial proceedings. Because the Wilmington applicant decided to build its new transmitter station immediately after the FCC's first order in this case, WPDE was able to collect evidence on the actual effect of the Wilmington order on its audience share between August of 1982 and May of 1983. See supra note 3. In its post-remand pleadings before the Commission, WPDE contended that this new data substantially supported its initial audience loss projections. See Notification of Intent to Supplement the Record on Remand, JA at 21-22; Petition for Reconsideration, JA at 148-50.[10] As we indicated earlier, the Commissioner erroneously relied on section 402(h) to reject the "new evidence" portion of the supplement. See supra pp. 98-101. WPDE argues that the Commission could not rationally conclude that its claims concerning audience loss were "too speculative" to require a public interest hearing on the cumulative impact claim without considering the updated data contained in the supplement.
 
 
 29
 Had the Commission based its ruling solely on WPDE's failure to produce convincing evidence of audience loss, this argument might well be compelling. Cf., e.g., Crosthwait v. FCC, 584 F.2d 550, 552 (D.C.Cir.1978). Yet the Commission explicitly concluded that WPDE's cumulative impact claim would not warrant a hearing even if it credited WPDE's initial audience loss projections. First, the Commission found that WPDE had erroneously equated lost audience share with lost revenues and reduced public interest programming capability.
 
 
 30
 The petitioner has, with only a bare unsupported assertion, translated its speculative audience loss estimate into a corresponding loss of revenues. The petitioner has not indicated that it has polled its advertisers, conducted discussions with advertising agencies, or undertaken a commercial rate study ... relative to the cumulative effect that grant of these applications will have on the purchase of advertising time on WPDE. No attempt has been made to distinguish between projected losses from the sale of advertising time and the revenue derived from the sale of station time to the network.... The petitioner offers no explanation for its belief that the station could only survive by reducing programming as opposed to administrative, operating or other expenses.... Further, ... no analysis was undertaken to relate why ... the station could not reduce programming other than news, public affairs or local programs.... Therefore, although some revenue loss may be occasioned by grant of the instant applications, there is no evidence indicating that the cumulative effect would threaten the economic viability of WPDE.
 
 
 31
 Order at 8, JA at 8. The FCC also determined that WPDE had failed to account for its network revenues and had provided no support for its claim that the cumulative impact of the two proposals would cause WPDE to lose its ABC affiliation. See id. at 7-8, JA at 7-8. Finally, the Commission concluded that, even assuming the projected audience loss, the substantial public interest benefits that would result from the two new transmitters far outweighed any cumulative impact on WPDE. See id. at 8-9, JA at 8-9.[11]
 
 
 32
 Thus while the supplement might validate some of WPDE's initial audience loss projections, the Commission clearly concluded that those projections, even if true, could not support WPDE's claim for a public interest hearing under the Act. Because the Commission rejected the cumulative impact claim for reasons independent of WPDE's audience loss projections, its refusal to consider the "new evidence" portion of the supplement amounted to harmless error. See 5 U.S.C. Sec. 706; cf. Delta air lineS, inc. v. cab, 564 f.2d 592, 598 (D.C.Cir.1977). We therefore hold that the Commission was not required to reopen the record in order to comply with our mandate and that, under the particular circumstances of this case, its failure to do so did not constitute reversible error.
 
 
 33
 IV. THE MERITS: THE COMMISSION'S REFUSAL TO HOLD A PUBLIC
 
 INTEREST HEARING
 
 34
 The appellant finally argues that, even if the FCC was not obliged to consider its supplement, its analysis of whether WPDE was entitled to a hearing under the Act was again inadequate and conclusory. We cannot agree. The Act requires the Commission to hold a hearing where "a substantial and material question of fact is presented or if the Commission for any reason is unable to find that the grant of the application" would serve the public interest. 47 U.S.C. Sec. 309(e) (emphasis added). In order to warrant a hearing, the petition must contain "specific allegations of fact sufficient to show ... that a grant of the application would be prima facie inconsistent" with the public interest. Id. Sec. 309(d)(1). This court has consistently recognized that FCC hearing determinations are entitled to substantial deference under these provisions. "The substantiality and materiality of purported issues of fact, and the need for further information, are issues to be evaluated in the first instance by the Commission in the light of its public interest responsibility. This court's oversight role is quite limited." United States v. FCC, 652 F.2d 72, 90-91 n. 87 (D.C.Cir.1980) (en banc); see also California Public Broadcasting Forum v. FCC, 752 F.2d 670, 675 (D.C.Cir.1985); Stone v. FCC, 466 F.2d 316, 322-23 (D.C.Cir.1972).
 
 
 35
 WPDE's underlying claim for a hearing is premised on the FCC's UHF impact policy which, at one point at least, established a type of presumption that UHF stations such as WPDE are adversely affected by VHF competition. See supra note 1. The Commission, however, has substantially revised its UHF impact policy over the past decade to correspond to the increasing success of UHF television.
 
 
 36
 We do not ... believe ... that all that is necessary to require designation [for a UHF impact hearing] is the allegation that grant of an application would extend another VHF service into communities where UHF channels are occupied or allocated.... [I]t is clear that, to require designation of an application for hearing, a petition must demonstrate some nexus between the fact of extended VHF service and claimed specific adverse consequences to the public interest.
 
 
 37
 WFMY Television Corp., 59 F.C.C.2d 1010, 1012-13 (1976) (citations omitted); see also West, Inc., 80 F.C.C.2d 233 (1980). Thus the current UHF impact doctrine does not relieve the appellant of its statutory obligation to present specific and material allegations that extended VHF service will harm the public interest as a whole.
 
 
 38
 Mindful of the FCC's broad discretion to determine when UHF impact claims warrant a hearing under the Act, our earlier decision ordered the Commission to provide more than a bare assertion that the appellant could not state a case for a hearing. We directed the FCC to make this determination "[j]ust as [it had] balanced the extension of VHF television service against the speculative losses in UHF public interest programming in order to ascertain the consequence to the public interest in the [Charleston case]." Capital Communications, mem. op. at 4. In response to our concerns, the Commission explicitly applied its earlier analysis to WPDE's cumulative impact claim and found that claim wanting.
 
 
 39
 From the materials before us, we find that the petitioner has not made the requisite showing required to set these applications for hearing. In sum, we note that the Court specifically did not question our analysis of WPDE's showing against the Wilmington application when viewed individually. Nor did the Court fault our analysis of WPDE's showing ... against the Charleston applications. Those analyses led us to conclude that WPDE's showing with respect to its projected revenue losses were replete with unsupported assumptions. Further WPDE failed to relate its projected revenue losses to the cost of specific programs. These deficiencies also exist in WPDE's approach when cumulatively considered. Although the petitioner maintains that the cumulative effect of the grant of these applications will reduce audience and revenues at WPDE, those losses remain speculative and, in any event, fail to establish a nexus between the fact of the proposed extension of VHF service and specific adverse consequences to the public interest. As explained previously, there is no basis for the petitioner's claim that viewers in the cumulative overlap area will, en masse, abandon WPDE, resulting in a corresponding loss of revenue. However, more significantly, the petitioner has claimed no specific adverse consequences to the public interest beyond the impact on WPDE individually.
 
 
 40
 Order at p. 8, JA at 8; see also supra note 11. This explanation is virtually identical to the analysis we expressly upheld as applied to WPDE's separate challenges to the Wilmington and Charleston proposals. See First Charleston Corp., 91 F.C.C.2d 388, 394-96 (1982); Clay Broadcasting, 51 Rad.Reg. 2d (P&F) 916, 917 (1982). We therefore cannot say that the Commission's analysis of WPDE's cumulative impact argument was unreasonably inadequate or conclusory.
 
 V. CONCLUSION
 
 41
 Although we find that the Commission arbitrarily invoked section 402(h) of the Act to reject portions of WPDE's supplemental filing, we conclude that the Commission acted within its discretion when it determined that the existing record evidence and arguments permitted a rational analysis of WPDE's claim and that WPDE was not entitled to a public interest hearing concerning the cumulative impact of the Charleston and Wilmington proposals. The orders under review are therefore
 
 
 42
 Affirmed.
 
 
 
 [1]
 The Commission's UHF impact doctrine is intended to account for the inherent technological advantages of VHF transmission over UHF transmission. UHF signal strength, for example, declines more rapidly with distance than does VHF signal strength and is more vulnerable to interference by terrain variation and buildings. In UHF's fledgling years, the Commission took several steps to protect UHF broadcasting including the establishment of a very lenient standard for accepting allegations of adverse impact resulting from VHF signal overlap. See, e.g., Springfield Television, Inc. v. FCC, 710 F.2d 620, 624-26 (10th Cir.1983). As the UHF television industry has grown, however, the Commission has given progressively less emphasis to this UHF impact policy. See WCOV, Inc. v. FCC, 464 F.2d 812, 815 (D.C.Cir.1972); infra pp. 104-105
 
 
 [2]
 Several Columbia stations joined WPDE in its initial opposition to the Charleston application, arguing that the proposed tall tower would permit unreasonable signal overlap into their audience areas as well. Our initial decision to uphold the separate Charleston order disposed of these copetitioners' claims
 
 
 [3]
 The Wilmington applicant decided to build its tower immediately after the Commission's initial order granting its application and it commenced operation from the new transmitter in August of 1982. Audience rating data reflecting the impact of the Wilmington order on WPDE first became available in February of 1983. See Notification of Intent to Supplement the Record on Remand, JA at 21
 
 
 [4]
 The Commission did not construe section 402(h) to prohibit it from entertaining "additional comments on the existing record in a manner consistent with the Court's remand order." Reconsideration Order, 97 F.C.C.2d at 278 n. 12. The Commission determined, however, that such comments were not necessary to carry out our remand order in this case. See id.; infra pp. 101-103
 
 
 [5]
 The Commission attempted to distinguish some of these decisions on the ground that "the facts contained in the existing record [in those cases] ... were found inadequate to resolve the issues then on remand." Reconsideration Order, 97 F.C.C.2d at 277. That the Commission exercised its discretion not to reopen the records in some prior proceedings, however, does not support its present interpretation of section 402(h) under which it has no discretion to determine whether the existing record allows the agency to carry out a remand order
 
 
 [6]
 In Meadville Master Antenna, Inc., 36 F.C.C.2d 591 (1972), the Commission also ordered a post-remand evidentiary hearing despite the absence of any such direction in the court's remand order. The Commission reasoned that section 402(h) was inapplicable to that case on the theory that the provision only relates to cases brought under 47 U.S.C. Sec. 402(b), which grants this court exclusive appellate jurisdiction over certain licensing disputes (including the dispute involved here). The Meadville case, by contrast, was appealed under the Act's general judicial review section, 47 U.S.C. Sec. 402(a). See Meadville, 36 F.C.C.2d at 594; see also Reconsideration Order, 97 F.C.C.2d at 277. We note that no such distinction appears on the face of section 402(h) and that this argument does not explain the FCC's practice of reopening records in section 402(b) cases. See, e.g., Charles Robbins, 68 F.C.C.2d at 47; Lebanon Valley, 50 F.C.C.2d at 384
 The Commission also points to Cosmopolitan Broadcasting, Inc., 75 F.C.C.2d 423 (1980), aff'd mem., No. 80-1902 (D.C.Cir. June 29, 1981), and Radio Carrollton, 72 F.C.C.2d 264 (1979), aff'd mem., No. 79-1749 (D.C.Cir. Oct. 15, 1980), in support of its interpretation of section 402(h). Although the Commission declined to reopen the record following a remand in both of those cases, it clearly did so on the basis of agency discretion. See Cosmopolitan Broadcasting, 75 F.C.C.2d at 425; Radio Carrollton, 72 F.C.C.2d at 262 (noting the "discretion granted administrative agencies in choosing how to conduct agency proceedings on remand"). Neither case so much as mentioned section 402(h).
 
 
 [7]
 The appellant further suggests that section 402(h), despite its sweeping language, was primarily intended to prevent the FCC from frustrating court orders by reopening the record to add new parties or new issues on remand. See, e.g., S.Rep. No. 44, 82nd Cong., 1st Sess. 3, 12 (1951) (discussing, in part, the post-remand addition of new parties and new issues); Amending Communications Act of 1934: Hearings Before a Subcommittee of the Senate Committee on Interstate and Foreign Commerce on S. 1333, 80th Cong., 1st Sess. 11, 87 (June 17-27, 1947) (suggesting that section 402(h) was added in response to the Supreme Court's decision in Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed.2d 656 (1940), which involved the post-remand addition of new parties and issues); Amending Communications Act of 1934: Hearings Before the House Committee on Interstate and Foreign Commerce on S. 658, 80th Cong., 1st Sess. 103 (Apr. 24-30, 1951) (same)
 The Commission, in turn, has indeed cited section 402(h) as a constraint on its discretion to add new parties or entirely new issues on remand. See Cowles Broadcasting, Inc., 86 F.C.C.2d 993, 1022 & n. 27 (1982), aff'd, 683 F.2d 503 (D.C.Cir.1982); Lebanon Valley Radio, Inc., 54 F.C.C.2d 562, 563 n. 1 (1975); Consolidated Nine Inc., 17 F.C.C.2d 482, 483-84 (1969). The Commission's post-remand actions in Lebanon Valley, for instance, were apparently consistent with the appellant's interpretation of section 402(h). In that case, the Commission solicited additional filings on a specifically remanded issue, see Lebanon Valley, 50 F.C.C.2d at 384, but refused to add new parties or new issues, see Lebanon Valley, 54 F.C.C.2d at 563 n. 1 (citing section 402(h)). We express absolutely no view as to whether WPDE's interpretation of section 402(h) is plausible. See infra p. 101.
 
 
 [8]
 The FCC cannot argue that our remand order in any way prevented WPDE from relying on its practice of allowing additional submissions on specifically remanded issues. That order followed usual judicial practice by allowing the agency to determine whether post-remand filings were necessary to comply with our mandate; it simply cannot be read to foreclose the possibility of post-remand submissions. See supra pp. 97-98. Moreover, WPDE specifically requested instructions from the Commission concerning the proper procedure for submitting its supplement shortly after our remand order. See Reply to Opposition to Notification of Intent to Supplement the Record on Remand, JA at 39 n. 4 (June 28, 1983). The Commission did not inform WPDE of any obligation to seek judicial leave to supplement the record at that point, and it cannot argue now that WPDE's failure to do so totally undermines its attempt to file post-remand materials
 
 
 [9]
 WPDE also argues that our remand, which ordered the two initial proceedings consolidated, see Capital Communications, mem. op. at 3, implicitly recognized that WPDE was not given an adequate opportunity to address the cumulative impact claim in its earlier separate filings. Because WPDE's earlier motion to consolidate only spoke to the prima facie issue of consolidation rather than to the merits of the cumulative impact claim, this argument goes, our consolidation order necessarily contemplated the submission of additional materials designed to synthesize the data presented in the initial, separate proceedings. See WPDE's Brief at 20-21. As the FCC and intervenors emphasize, however, WPDE presented most of the evidence underlying its cumulative impact claim in the earlier proceedings, and it in fact offered a synthesis of that evidence in its motion to consolidate. Moreover, WPDE did not claim in the earlier proceedings before this court that the FCC had prematurely cut off the pleadings on the cumulative impact issue. Instead, WPDE argued then that the Commission had failed to consider adequately the substantial factual allegations contained in its motion to consolidate. See WPDE's Brief in Nos. 82-1730, et al., at pp. 9-11, 52-53. We are thus unwilling to read into our consolidation order a direction to permit WPDE to supplement the record. If anything, our call for an adequate explanation of the cumulative impact claim--rather than for a hearing on that issue--recognized the possibility that the FCC could conceivably provide such an explanation on the basis of the existing record. Compare, e.g., California Public Broadcasting Forum v. FCC, 752 F.2d 670, 676-80 (D.C.Cir.1985) (rejecting the Commission's explanation that the petitioner had failed to state a prima facie case for a public interest hearing and ordering such a hearing)
 
 
 [10]
 In those pleadings, WPDE only argued that the new data contained in the supplement tended to support its initial projections concerning the impact of the Wilmington Order. WPDE has not argued before the Commission or this court that its new evidence demonstrates that the impact of the Wilmington order is in fact any more severe than WPDE initially projected. See, e.g., Petition for Reconsideration at 6, JA at 150; WPDE's Brief at 13. The supplement also alleges that WPDE has recently laid off two employees and downgraded a news segment. WPDE did not, however, stress this fact in its pleadings concerning the supplement, and we do not believe that it constitutes "a change in 'core' circumstances, the kind of change that goes to the very heart of the case." Greater Boston Television, 463 F.2d at 283, in the light of the Commission's overall rationale
 
 
 [11]
 As the Commission pointed out:
 According to figures submitted by the applicants, grant of the Charleston applications will extend ... first ABC network service to 23,000 people; first NBC service to 4,680 people; first CBS service to 23,906; first three commercial network service to 75,713 people; and improve educational television service, especially in areas which receive inferior service from WITV (TV), because that station broadcasts from an inferior tower position. Grant of the Wilmington application has resulted in a much more efficient use of spectrum space, as the station is now operating at close to maximum facilities, improving service to those currently receiving its signal as well as providing a new television service to areas outside [of WPDE's service area].
 Order at 9, JA at 9.