940 F.2d 699
 291 U.S.App.D.C. 268
 OKLAHOMA NATURAL GAS COMPANY, A DIVISION OF ONEOK, INC., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Williams Natural Gas Company, Ladd Gas Marketing, Inc.,
PowerSmith Cogeneration Project, Limited
Partnership, Intervenors.
 No. 90-1603.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 6, 1991.
Decided Aug. 2, 1991.
As Amended Aug. 2, 1991.
 
 Petition for Review of an Order of the Federal Energy Regulatory Commission.
 William I. Harkaway, with whom Kathleen Mazure, Washington, D.C., C. Burnett Dunn, and Brad D. Fuller, were on the brief, Tulsa, Okl., for petitioner.
 Jerome M. Feit, Sol., F.E.R.C., with whom William S. Scherman, Gen. Counsel, and Joel M. Cockrell, Atty., F.E.R.C., were on the brief, Washington, D.C., for respondent. Catherine C. Cook, Atty., F.E.R.C., also entered an appearance, Washington, D.C., for respondent.
 Ronald N. Carroll, with whom Harold L. Talisman and John H. Cary, Washington, D.C., for Williams Natural Gas Co., John N. Estes and Douglas E. Nordlinger, Washington, D.C., for PowerSmith Cogeneration Project, Ltd. Partnership, and Mark L. Van Scoyk, Denver, Colo., for Ladd Gas Marketing, Inc., were on the joint brief, for intervenors. Megan A. Sperling also entered an appearance, Washington, D.C., for intervenor, Williams Natural Gas Co.
 Before RUTH BADER GINSBURG, SILBERMAN, and D.H. GINSBURG, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SILBERMAN.
 SILBERMAN, Circuit Judge:
 
 
 1
 We remanded this case to the Federal Energy Regulatory Commission (FERC) last year because we did not understand the Commission's reasons for asserting jurisdiction over the proposed transaction--the construction of a 12.4 mile pipeline connecting an interstate pipeline to a cogeneration power project. Oklahoma Natural Gas Co. v. FERC, 906 F.2d 708 (D.C.Cir.1990) (ONG I ). The Commission had explained its position only in a cryptic footnote. The Commission has expanded its footnote into a four page opinion, Williams Natural Gas Co., 52 F.E.R.C. p 61,294 (1990), but the increased wording does not help us very much to understand the Commission's position; it is as if on learning that a listener does not understand English, the speaker tries shouting. We therefore remand again for an adequate explanation.
 
 I.
 
 2
 We repeat the facts as set forth in our prior opinion:
 
 
 3
 Williams [Natural Gas Company] operates a 16-inch certificated interstate pipeline called the "cement pipeline" which takes gas from producers in western Oklahoma and transports it in interstate commerce. PowerSmith is a cogeneration plant under construction in Oklahoma City, some 12 miles away from the cement pipeline. Ladd Gas Marketing, Inc. ("Ladd") has agreed to sell PowerSmith all its gas requirements for fifteen years, and Ladd, PowerSmith and Williams have entered into a "transportation" agreement whereby Williams will deliver gas from its cement pipeline to PowerSmith--which requires the 12.4 mile lateral pipeline extension, the certification of which is the subject of this appeal. Ladd will compensate Williams by delivering gas to its pipeline at a number of designated receipt points downstream of the new extension, including locations in Kansas and Wyoming. The Commission describes this arrangement as a form of transportation called a "backhaul," as if Williams were taking the gas that Ladd puts in the cement pipeline downstream of the extension and transporting it upstream to PowerSmith, which, of course, is not what actually happens.
 
 
 4
 The Commission's jurisdiction over this transaction depends on the three-party arrangement being regarded as transportation, since the sale from Ladd to PowerSmith, even if viewed as interstate in character, would not itself confer jurisdiction on the Commission under section 1(b) of the Natural Gas Act ("NGA"), which provides only for FERC regulation of "the sale in interstate commerce of natural gas for resale...." See 15 U.S.C. Sec. 717(b) (emphasis added). Under section 1(b), FERC may also exercise jurisdiction over the transportation of natural gas in interstate commerce. Id.... [Transportation is defined under the NGA] to mean "commerce between any point in a State and any point outside thereof, or between points within the same State but through any place outside thereof...." 15 U.S.C. Sec. 717a(7). ONG argued that, since no molecule of gas that would be transported to PowerSmith could possibly cross state lines--gas would be gathered from producers in
 
 
 5
 Oklahoma, transported on the cement pipeline only in Oklahoma, and then carried from the cement pipeline through the lateral to PowerSmith in Oklahoma City--the lateral pipeline could not fall within the Commission's jurisdiction.
 
 ONG I, 906 F.2d at 709-10.[1]
 
 6
 As discussed in the prior opinion, the Commission bases its claim that the pipeline will be engaged in transportation in interstate commerce within the statute's meaning on two grounds: first, that the overall contractual arrangement between Williams, Ladd and PowerSmith is actually a form of transportation called a "backhaul" which makes the physical pattern in which the gas flows irrelevant; and, second, that since the cement pipeline is a certificated interstate pipeline and carries gas destined for interstate commerce, the extension attached to it also transports gas in interstate commerce. Id. at 711.[2]
 
 
 7
 In response to our remand asking the Commission to elaborate and explain both assertions, the Commission first set forth its "backhaul" theory. We are told that we should think of this transaction as one in which Ladd is selling gas to PowerSmith that it purchased downstream of
 
 
 8
 PowerSmith in Kansas and Wyoming. When Williams delivers gas gathered in Oklahoma to PowerSmith at Ladd's direction and then Ladd delivers to Williams an equal amount of gas at the downstream locations in Kansas and Wyoming, the effect is the same as if Ladd has shipped the gas upstream to PowerSmith from Kansas and Wyoming. This transaction purportedly meets the statutory definition of transportation because "the economic effect of the transaction is that a specific amount of gas enters Williams' system in Kansas and Wyoming and that same amount of gas leaves Williams' system in Oklahoma." Williams Natural Gas Co., 52 F.E.R.C. p 61,294 at 62,157. The Commission relies on United Gas Improvement Co. v. Continental Oil Co., 381 U.S. 392, 399-402, 85 S.Ct. 1517, 1521-23, 14 L.Ed.2d 466 (1965), for support of its proposition that the underlying economic facts of the transaction should determine its jurisdiction. United Gas, however, construed section 1(b) of the NGA, which concerns "sale for resale." The concept of sale seems more amenable to an "economic" interpretation than does "transportation," which appears most naturally to refer to the actual physical movement of gas. Cf.Connecticut Light & Power Co. v. FPC, 324 U.S. 515, 529-30, 65 S.Ct. 749, 755-56, 89 L.Ed. 1150 (1945).
 
 
 9
 If the Commission's interpretation of transportation were permissible, would it not apply to a buyer in New York who traded an amount of gas in a pipeline in California for an equal amount of gas in Maine? Would FERC assert that such a trade is transportation from California to New York within the meaning of the Act? If it is, why would that not allow the parties to obtain FERC jurisdiction through barter of gas in almost any situation, thereby rendering the "sale for resale" jurisdictional limitation nugatory? The Commission does not even attempt to find support for its "backhaul" notion in the statute or the legislative history, relying instead on its own regulation that defines a backhaul as transportation, see 18 C.F.R. Sec. 284.1(a).[3] We think the Commission must provide us with more to gain acceptance of its definition.
 
 
 10
 The Commission's second ground for asserting that the pipeline extension will transport gas in interstate commerce is predicated on the interstate character of the high pressure cement pipeline to which it will be attached. It is argued that the Supreme Court in FPC v. East Ohio Gas Co., 338 U.S. 464, 70 S.Ct. 266, 94 L.Ed. 268 (1950), and our court in Public Utils. Comm'n of California v. FERC, 900 F.2d 269 (D.C.Cir.1990), have recognized that high pressure pipelines transporting gas to local mains within a single state "were subject to federal, rather than state, jurisdiction." Williams Natural Gas Co., 52 F.E.R.C. p 61,294 at 62,158. In East Ohio and California, however, there was no question that the gas had been physically transported interstate. See East Ohio, 338 U.S. at 467, 70 S.Ct. at 268; California, 900 F.2d at 273. The issue presented was the application of an exception to the Commission's jurisdiction over interstate transportation because the subject lines were alleged to be used for "local distribution facilities." The exception for "local distribution facilities" assumes that there is interstate gas in the pipelines: otherwise, FERC would have no jurisdiction to begin with, and there would be no need for an exception. In the context of defining the term "local distribution facility," the high pressure nature of a pipeline is clearly relevant, see East Ohio, 338 U.S. at 470, 70 S.Ct. at 269; California, 900 F.2d at 275-76, but it is not apparent why that should be so when the question is whether the gas is transported in interstate commerce at all. The speed with which the gas moves in the cement pipeline to PowerSmith does not seem to bear on the question whether gas that has not and will never leave Oklahoma is nonetheless interstate gas.[4]
 
 
 11
 FERC seems to rest mostly on the commingling theory which the Supreme Court used to support federal jurisdiction in California v. Lo-Vaca Gathering Co., 379 U.S. 366, 85 S.Ct. 486, 13 L.Ed.2d 357 (1965). The Commission asserts that since the gas that will be transported in the extension will have been mixed with gas travelling in interstate commerce, so that you could not tell one molecule from the other, all the gas--including that to be diverted in the extension to PowerSmith--is interstate in character. Petitioner responds that we can be absolutely certain that all of the gas molecules that arrive at PowerSmith will never move across state lines.
 
 
 12
 Lo-Vaca involved a question whether jurisdiction was established by the sale for resale provision of the NGA, rather than the provision based on transportation. The purchaser, El Paso, sought to defeat federal jurisdiction by contracting with the seller, Lo-Vaca, for gas that was to be used only by El Paso and therefore was not "for resale." El Paso was also buying gas from Lo-Vaca for resale, and the gas was shipped together so that it was impossible to tell which molecules of gas would end up serving which purpose. See id. at 367-68, 85 S.Ct. at 487. The court thought the scheme was designed artificially to avoid federal jurisdiction. See id. at 369-70, 85 S.Ct. at 488. To support its argument, the Commission's counsel (although not the Commission) also relies heavily on Louisiana Power & Light Co. v. FPC, 483 F.2d 623 (5th Cir.1973), cert. denied, 416 U.S. 974, 94 S.Ct. 2001, 40 L.Ed.2d 563 (1974), arguing that the facts of Louisiana Power are almost indistinguishable from this case. In Louisiana Power the gas company injected some of its gas from the interstate system into an intrastate system, thereby creating federal jurisdiction over the latter. See id. at 627-29.
 
 
 13
 In our original opinion we pointed out how Lo-Vaca differs from this case. See ONG I, 906 F.2d at 711-12. The Commission, in response to our concerns, simply states that "[n]onetheless, the rationale in Lo-Vaca applies equally here because transportation alone on an interstate pipeline is no less jurisdictional than transportation as an aspect of a sale for resale." Williams Natural Gas Co., 52 F.E.R.C. p 61,294 at 62,158.
 
 
 14
 The fact that Lo-Vaca involved a sales transaction and the instant proceeding involves a transportation transaction is of little jurisdictional consequence under the NGA because a sales transaction is a bundled service that includes sales and transportation, both of which are jurisdictional. The Commission's jurisdiction attaches to sales for resale and to the transportation of gas in interstate commerce. Moreover, the above rationale which the court applied in Lo-Vaca is equally applicable to transportation transactions.
 
 
 15
 Id. at 62,159. With all due respect, the Commission's reasoning seems to us to be more of a non sequitur than a response to our questions. Our point, of course, was that in Lo-Vaca and Louisiana Power the consequences of commingling were different from those presented here. The legal and policy concerns in Lo-Vaca and Louisiana Power depended on the notion that gas was "dedicated to interstate commerce" whenever it was commingled in any fashion with jurisdictional gas. That concept, "dedicated to interstate commerce," partaking of both the "sale for resale" and "transportation" bases for jurisdiction, has, however, been undermined by changes in the industry caused by the massive deregulation of gas transportation pursuant to the Natural Gas Policy Act of 1978 and the Commission's promulgation of Orders Nos. 436 & 500. FERC has accordingly rejected the theory that commingled gas is necessarily "dedicated to interstate commerce." Mississippi Valley Gas Co. v. Gulf Fuels, Inc., 48 F.E.R.C. p 61,178 at 61,656 & n. 16 (1989).
 
 
 16
 The Commission finally argues that if its interpretation of the statute and Lo-Vaca is not followed, "interstate pipelines could escape federal jurisdiction by building laterals at points between gathering lines and state borders." Williams Natural Gas Co., 52 F.E.R.C. p 61,294 at 62,159. But the Commission is merely complaining that parties who manage to structure their arrangements to avoid federal jurisdiction can escape FERC's regulation. This, however, might simply be a consequence of the congressional decision to limit FERC's jurisdiction.
 
 
 17
 We do not pretend that the statutory language is crystal clear, but FERC has not sought deference for its interpretation underChevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[5] Perhaps that is because the question whether deference is due an agency's interpretation of ambiguous language in a jurisdictional context is unsettled. See, e.g., Business Roundtable v. SEC, 905 F.2d 406, 408 (D.C.Cir.1990). We rather doubt, however, having seen two of FERC's efforts to justify its interpretation of the statute, that it will be possible for the Commission to gain judicial acceptance of its position without seeking Chevron deference.
 
 II.
 
 18
 ONG, in an effort to protect its franchise, has been engaged in rather frenetic litigation efforts on several fronts including an action brought in state court in Oklahoma seeking to preserve its monopoly position. Williams, in response, sought an injunction in federal district court in Oklahoma to prevent the state court litigation. The injunction was denied but the district court was reversed by the Tenth Circuit. See Williams Natural Gas Co. v. City of Oklahoma City, 890 F.2d 255 (10th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990). The Tenth Circuit held that the question whether the Natural Gas Act pre-empted the state franchise law should have been raised before FERC. In the remand proceedings from this court, ONG sought to raise the preemption issue. ONG asserted that the Tenth Circuit's opinion was so "unprecedented" as to require FERC to reopen the proceedings. FERC refused to permit the introduction of that question at this late date. Petitioner seeks review of that determination as well, claiming that the Commission's determination was an abuse of discretion.
 
 
 19
 The standard of review of such decisions, however, is very narrow, see Eastern Carolinas Broadcasting Co. v. FCC, 762 F.2d 95, 103 (D.C.Cir.1985), and we would find a reversible error only when the new developments "rise[ ] to the level of a change in 'core' circumstances." Greater Boston Television Corp. v. FCC, 463 F.2d 268, 283 (D.C.Cir.1971), cert. denied, 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972). See also Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 294-95, 95 S.Ct. 438, 446, 42 L.Ed.2d 447 (1974). There is no change in the "core" circumstances here and no indication of a compelling cause for the extraordinary relief requested: ONG could have raised the preemption issue before FERC at the same time that it was raising it before the courts in Oklahoma. Essentially, ONG's claim boils down to asking us to find that the Tenth Circuit committed a clear error of law which cannot be ignored by FERC. This we will not do.
 
 
 20
 We grant the petition for review and remand to the agency.
 
 
 21
 It is so ordered.
 
 
 
 [1]
 If FERC has jurisdiction over this arrangement, then ONG cannot use its franchise to charge monopoly rates for its transportation of gas from Williams to PowerSmith
 
 
 [2]
 The Commission mentioned that there is at least a possibility that at some point in the future the direction of gas flow will be reversed and gas for PowerSmith will be gathered from out-of-state sources and shipped interstate. Williams Natural Gas Co., 52 F.E.R.C. p 61,294 at 62,158 n. 8. But it appears that the Commission did not rely on this highly dubious post hoc speculation as a basis for asserting federal jurisdiction
 
 
 [3]
 We have previously noted that backhaul is treated as transportation under the Commission's regulations, but we expressed no views as to the Commission's power to use that definition to expand its jurisdiction. See Associated Gas Distribs. v. FERC, 899 F.2d 1250, 1254 n. 1 (D.C.Cir.1990)
 
 
 [4]
 The Commission responds in a similar fashion to petitioner's argument that FERC's position is inconsistent with its repeated determinations that branch pipelines extending off interstate trunk lines are engaged in intrastate transportation. See, e.g., Mississippi Valley Gas Co. v. Gulf Fuels, Inc., 48 F.E.R.C. p 61,178 at 61,656 & n. 16 (1989); Natural Gas Pipeline of Am., 40 F.E.R.C. p 61,119 at 61,235 (1987). FERC argues in its brief that the branch pipeline in Gulf Fuels was owned by the consuming entity, but it is not clear why ownership of the branch line should be determinative in deciding whether the gas is "transported" interstate
 
 
 [5]
 Nor has the Commission attempted to show (although its counsel asserted the proposition) how the statutory definition of transportation in interstate commerce is affected by the unbundling of sales and transportation services pursuant to Orders Nos. 436 & 500