# United States Court of Appeals

## For the First Circuit

No. 04-1183

LINDA REYNOLDS-NAUGHTON,

Plaintiff, Appellant,

v.

NORWEGIAN CRUISE LINE LIMITED,
d/b/a NORWEGIAN CRUISE LINE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella, Circuit Judge,

and Saris,* District Judge.

    Vincent Galvin with whom Malcolm P. Galvin, III was on brief for appellant.
    Peter A. Junge with whom Lambos & Junge was on brief for appellee.

September 14, 2004

---

*Of the District of Massachusetts, sitting by designation.

**BOUDIN**, <u>Chief Judge</u>.  While on a cruise from Boston to Bermuda aboard the <u>Norwegian Majesty</u> in May 2002, Linda Reynolds-Naughton was injured (according to her later complaint) by a passenger door that closed unexpectedly on her hand.  The injury resulted in the loss of the top third of her right middle finger.  In May 2003 Reynolds-Naughton filed a negligence claim in admiralty in Massachusetts federal district court against the owner of the vessel, Norwegian Cruise Line Limited, a Bermuda corporation headquartered in Miami, Florida.

Reynolds-Naughton's passenger-ticket contract contained various limits on the cruise line's liability, including a forum selection clause.  This clause stated that "any and all claims, disputes or controversies whatsoever arising from or in connection with this Contract and the transportation furnished hereunder shall be commenced, filed and litigated, if at all, before a court of proper jurisdiction located in Dade County, Florida, U.S.A."  Anticipating a defense based on this clause, Reynolds-Naughton filed suit concurrently in the Southern District of Florida.

In September 2003, Norwegian Cruise Lines filed a motion to dismiss the Massachusetts case pursuant to the forum selection clause.  Reynolds-Naughton opposed the motion but not on the ground that the clause failed as an unfair contract of adhesion or that she lacked proper notice.  Rather, she claimed that the forum selection clause was invalid under the Limitation of Vessel Owner's

Liability Act, 46 U.S.C. app. § 183c (2000).  In December 2003, the
district court granted the motion to dismiss and this appeal
followed.

The Act, as it stood both at the time of Reynolds-
Naughton's trip and at the time the district court ruled, provided
in pertinent part that the owner of a vessel transporting persons
from or to United States ports could neither limit by contract its
liability for personal injury due to negligence, nor offer any
contract terms purporting to

> lessen, weaken, or avoid the right of any
> claimant to a trial <u>by court of competent
> jurisdiction</u> on the question of liability for
> such loss or injury, or the measure of damages
> therefor.

46 U.S.C. app. § 183c(a) (emphasis added).  Any such limitations
were explicitly declared null and void.  <u>Id.</u>

If the issue were open, one might read the above-quoted
language in several different ways.  But in <u>Carnival Cruise Lines,
Inc.</u> v. <u>Shute</u>, 499 U.S. 585, 596 (1991), the Supreme Court read it
as allowing forum selection clauses that limited the passenger's
choice of venue, so long as a "court of competent jurisdiction"
remained available to the passenger.  In this case, the district
court thought <u>Shute</u> controlling, as have other courts that have
addressed the same problem since <u>Shute</u>.[1]

---

[1] <u>See, e.g.</u>, <u>Smith</u> v. <u>Doe</u>, 991 F. Supp. 781, 782 (E.D. La.
1998); <u>Kalman</u> v. <u>Cunard Line, Ltd.</u>, 904 F. Supp. 1150, 1151 & n.1
(D. Haw. 1995); <u>Roberson</u> v. <u>Norwegian Cruise Line</u>, 897 F. Supp.

-3-

Reynolds-Naughton's argument to the contrary is inventive but ultimately unpersuasive. It rests upon the fact that in October 1992, Congress altered the above-quoted language by inserting the word "any" before the phrase "court of competent jurisdiction," and that in November 1993, Congress again amended the Act by deleting "any" and restoring the original text. How this happened and what was said by legislative spokesmen bear recounting.

The October 1992 amendment adding the word "any" originated in the House version of the Oceans Act of 1992, Pub. L. No. 102-587, § 3006, 106 Stat. 5039, 5068, sponsored by Gerry E. Studds of Massachusetts. Until the day of its adoption, this amendment had not been mentioned in debates or in a congressional report; it was apparently offered after both houses had completed their reports on the bill, and was first mentioned early on the morning of October 6, 1992, immediately before the House passed the statute and one day before the Senate did so (and three days before Congress recessed for three months).

Nevertheless, Congressman Studds said on the House floor prior to enactment that the purpose of the amendment was to "overturn the result in Carnival" and allow injured passengers to

---

1285, 1287-88 (C.D. Cal. 1995); Melnik v. Cunard Line Ltd., 875 F. Supp. 103, 106 (N.D.N.Y. 1994). Of these cases only the first two mention the post-Shute amendments to the Limitation Act, on which Reynolds-Naughton bases her appeal.

"choose the forum" and sue "in any court of competent jurisdiction."  138 Cong. Rec. H11,785 (daily ed. Oct. 5, 1992) (statement of Rep. Studds).  Taking the change of language together with this legislative history, we agree that Reynolds-Naughton's suit could be maintained in Massachusetts if the 1992 amendment governed this case.  But well before the district court acted, the law had changed again.

This time the amendment came from the Senate.  As another piece of maritime legislation was making its way through Congress, Senators Ted Stevens and Ernest F. Hollings offered an amendment to the House bill, replacing everything after the enacting clause with new text.  The new text included a provision deleting the word "any" from the Limitation Act paragraph in dispute in this case.[2] The Senate passed this substitute on the day the amendment was offered, and the House passed the same version less than 10 hours later.  Three days later Congress recessed.

If this were all that had happened, the outcome in this case would be obvious.  The natural inference would be that by striking "any" Congress was expressing an intention to go back to the precise language construed in Shute and, indeed, to enact the Supreme Court's gloss.  See Lorillard v. Pons, 434 U.S. 575, 580-81

_____

[2]See Coast Guard Authorization Act of 1993, § 309, Pub. L. No. 103-206, 107 Stat. 2419, 2425; 139 Cong. Rec. S16,957-67 (daily ed. Nov. 22, 1993).  Section 309, like section 3006 of the Oceans Act the year before, was labeled a "Technical Clarification."

(1978).  Even without this latter inference, <u>Shute</u>'s interpretation would certainly bind lower courts once Congress had re-adopted the glossed language.  At least, this would all be so in the absence of powerful legislative history giving a different spin to the 1993 amendment.

Reynolds-Naughton purports to offer just such legislative history.  When in November 1993 the Senate sent the newly amended version of the Coast Guard Authorization Act to the House, a member asked that Representative Studds explain its provisions.  139 Cong. Rec. H10,938 (daily ed. Nov. 22, 1993) (statement of Rep. Young).  Representative Studds replied that the 1992 revision to the Limitation Act (which was now to be undone) had been intended to overrule <u>Shute</u> and that the newly proposed deletion of "any" did not undo Congress' overruling of <u>Shute</u>.  Rather, the new bill's reversion to the pre-1992 text sought only

> to clarify that the tort action cannot be brought in just any district court of the United States, but must be filed in [a] court located in a district in which the vessel owner is doing business, the vessel is operating, or where the passenger board[s] the vessel.  For this reason, the word "any" has been deleted.  We do not intend by this amendment to restore the standard set by the Supreme Court in its 1991 decision, Carnival Cruise Lines versus Shute.

<u>Id.</u> at H10,939 (statement of Rep. Studds).

Representative Studds also read into the Congressional Record a "section-by-section analysis" of the bill, which similarly

-6-

stated that the bill did not intend to reinstate the Shute standard, but merely sought to clarify that the ordinary principle of forum non conveniens applied to the plaintiff's choice of forum. 139 Cong. Rec. H10,941 (daily ed. Nov. 22, 1993) (statement of Rep. Studds). Although another member of the Merchant Marine and Fisheries Committee referred to this section-by-section analysis as a "conference report," id. at H10,945 (statement of Rep. Bentley), this analysis never appeared in a printed report of Congress.[3]

A month after the Senate reconvened from its winter 1993 recess, Senators Stevens and Hollings responded. Describing the Studds statement to the House as a misinterpretation, Senator Stevens told the Senate that "[o]ur intent was that section 309 should be interpreted to allow vessels to enforce [forum selection] clauses, as upheld by the Supreme Court in the Shute case." 140 Cong. Rec. S1848 (daily ed. Feb. 24, 1994) (statement of Rep. Stevens). Senator Hollings agreed: "[T]he intent of the Senate amendment made in section 309 . . . was to reverse the action taken by Congress in section 3006 of the Oceans Act of 1992. By passing section 309, Congress has reinstated the decision in the Shute case . . . ." Id. (statement of Sen. Hollings).

---

[3]Nat'l Assoc. of Greeting Card Publishers v. United States Postal Serv., 462 U.S. 810, 832 n.28 (1983), relied upon by Reynolds-Naughton, is not helpful to her case. Greeting Card Publishers drew a clear distinction between a published conference report and a statement of the House Managers that was unilaterally appended to a conference report after that report had already been considered by the Senate.

-7-

Supporting the Senate sponsors of the 1993 change, Senator John B. Breaux added a further explanation for the Senate's decision to change the language back to its pre-1992 version:

> While it is perfectly legitimate for the Congress to overturn a Supreme Court decision within the bounds of the Constitution, we do not believe such changes should be made without notification to, and careful consideration by, the Members of Congress responsible for the enactment of the legislation. . . . At no time prior to the passage of the Oceans Act of 1992 was legislation introduced or did the House or Senate hold hearings on the cruise ship venue concern addressed by section 3006 of the Oceans Act. It is for this reason that the Senate supported a provision in the Coast Guard Authorization Act of 1993 to restore [46 U.S.C. app. § 183c(a)] to the wording as it read prior to the passage of the Oceans Act of 1992. Section 309 reinstates the Supreme Court decision in the Shute case as the applicable law for interpreting forum selection clauses.

140 Cong. Rec. S1847 (daily ed. Feb. 24, 1994) (statement of Rep. Breaux).

In urging that Representative Studds' view be credited, Reynolds-Naughton has the benefit of two circumstances: that Studds' interpretation is the only contemporaneous explanation of the 1993 change and that courts are generally quite suspicious of legislative history--such as the later Senate floor colloquy--created after enactment.[4]  Among the reasons for discounting such

---

[4]See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980); United States v. Phila. Nat'l Bank, 374 U.S. 321, 348-49 (1963). But see Andrus v. Shell Oil Co., 446 U.S. 657,

later history are that it is easily manufactured and that it comes at a time when it cannot influence anyone's vote.

Yet in this instance the linguistic evidence weighs heavily against the Studds gloss.  The deletion of "any" in 1993 was not coupled with any new language that accomplished the basic purpose that he gave for the change; the bill did not state, for example, that forum selection clauses were unlawful but that plaintiffs could only sue in specified jurisdictions (such as where the plaintiff had boarded).  Nor did the new version conform to Studds' section-by-section analysis by outlawing such clauses but adding that this did not limit forum non conveniens dismissals or transfers.

Forum non conveniens is a background doctrine, and there is little reason to think that the term "any" before "competent court" had ever been read to negate such a doctrine or that the term's subsequent deletion was intended merely to reawaken that doctrine.  And, had the purpose of the 1993 revision been to preserve the 1992 version's main aim, it would have been child's play to say that "forum selection clauses are void" but attach other forum restrictions.  The deletion of "any" is not a plausible way of achieving such an end.

---

666 n.8 (1980); Seatrain Shipbuilding Corp. v. Shell Oil Co., 444 U.S. 572, 596 (1980).

We cannot give weight to a single congressman's gloss, however ingenious, that is in such tension with the language, the sequence of events and the probable intent of the drafters. Despite Representative Studds' comments on the House floor, the change back to pre-1992 language is decisive in defeating Reynolds-Naughton's right to sue in Massachusetts. As already noted, the Senate amendment restored the text to the language to which Shute had given a controlling meaning and, in addition, the sequence warrants the inference that the purpose of the Senate's change was to restore the status quo ante.

The Senate statements are not similarly compromised by a tension between their gloss and the statutory language. Indeed, as the sponsors of the language, the views of Senators Stevens and Hollings would ordinarily get special weight.[5] Whether such post-enactment statements should be considered at all need not be resolved; the result in this case--that deleting "any" restores Shute--would be the same even if the senators had said nothing.

Affirmed.

---

[5]The case law to this effect is familiar, and the decisions also advise caution in accepting the gloss offered by opponents--which in practical terms includes Representative Studds in this case. See Bankamerica Corp. v. United States, 462 U.S. 122, 139 (1983); see also NLRB v. Fruit & Vegetable Packers & Warehousemen, Local 760, 377 U.S. 58, 66 (1964).